OPINION
{¶ 1} Plaintiff-appellant, Tammy Young, the administratrix of the estate of Douglas Young, appeals from a judgment of the Court of Claims of Ohio finding Guy Marrelli ("Marrelli"), immune from liability in this lawsuit against defendant-appellee, The University of Akron. For the following reasons, we affirm that judgment.
 {¶ 2} Marrelli, an electrical engineer who worked for appellee since 1990, was advised in 1994 that the existing oil switchgears on appellee's campus were a safety concern and should be replaced. A switchgear is a general term for electrical devices that control, meter, and protect the flow of electric power. Switchgears were located in different buildings on appellee's campus to control the flow of electricity from electrical substations into the buildings.
 {¶ 3} Sometime in 1998, Marrelli completed project drawings and specifications for the switchgear replacement and the project was bid. Pursuant to that bidding process, Thompson Electric ("Thompson") was awarded the project. On July 7, 1998, appellee entered into an "Agreement for Construction Services" with Thompson to replace the existing oil switchgears. Appellee agreed to pay Thompson $174,175 for the project (eventually, the total amount paid was $188,775). Thompson agreed to provide all necessary materials to complete the project and to complete the project in accordance with Marrelli's specifications. As part of those specifications, appellee required Thompson to notify it of any changes in the work with a written addendum or change order. Appellee also required Thompson to keep "as-built" drawings, which would show the actual work performed where the work differed from the original project drawings. Thompson was to record any approved changes on the as-built drawings. The specifications also prohibited Thompson from making any substitutions.
 {¶ 4} Switchgears include a structure known as a bushing which provides an insulated entrance into the switchgear for an energized conductor. The bushing also prevents energized conductors from coming into contact with each other and the switchgear itself. In essence, the bushing is the point of entry where a cable carrying electricity connects to the switchgear so that the switchgear can then transform the electricity and transport it to its intended destination. The switchgear involved in this case contained four rows of bushings with three bushings in each row. Marrelli's project drawings specified that the new switchgears were to have 200 amp bushings. Marrelli's specifications also required that the energized cables connect to the bushings with 200 amp load break elbows. Load break elbows provide an insulated high voltage connection for the energized cable to connect to the switchgear. Load break elbows allow the switchgear to be "dead front," meaning that the electrical cables are fully insulated and the switchgear can be disconnected or operated while energized (under load) assuming all other safety precautions are taken.
 {¶ 5} At some point, it was discovered that the switchgear Thompson purchased for the project contained 600 amp bushings rather than 200 amp bushings as required by the project specifications. Drawings approved by Marrelli show that he approved the switchgear's 600 amp bushings even though they conflicted with his own specifications. This difference was significant because 200 amp load break elbows could not be used with 600 amp bushings without an adaptor. Because of that incompatibility, the 200 amp load break elbows required by Marrelli's specifications could not be used to connect the electric cables to the switchgear.
 {¶ 6} Douglas Young ("Young") was a Thompson employee and was the foreman for this project. When it was discovered that the 200 amp load break elbows would not fit the specified switchgear, Young had a conversation with a sales representative from the company who sold the switchgear, Haverstock Bowers, and his boss, division manager William Anderson. Pursuant to that conversation, the decision was made to tape the switchgear connections with 130C 3M electrical tape. Thompson did not submit a change order for the new connections to Marrelli, nor did it make any as-built drawings of the new taped connections. Young and Anderson subsequently told Marrelli about the incompatibility of the bushings and the load break elbows and the need to tape the connections. Marrelli contends that he did not know about the taped connections until May 1999, when he made a final inspection of Thompson's work. Marrelli testified that he accepted the taped connections only after Thompson assured him that the connections were safe.
 {¶ 7} Shortly after his final inspection of the newly installed switchgear, around June 10, 1999, representatives from Haverstock Bowers (a distributor) and the manufacturer of the switchgear visited appellee's campus and saw the switchgear's taped connections. The representatives from Haverstock Bowers expressed concern about the taped connections. Bryan Miller, one of those representatives, allegedly tried to call Marrelli on the phone and left several messages on Marrelli's voicemail. When Marrelli did not return his calls, Miller contends he wrote Marrelli a letter to express his concerns about the taped connections and to make sure that Marrelli knew the taped connections did not make the switchgear "dead front" like a load break elbow would. Marrelli did not recall receiving this letter and Miller did not recall hearing from Marrelli after Miller sent this letter.
 {¶ 8} Almost two years later, on May 16, 2001, Young was working on the newly installed switchgear on appellee's campus. The switchgear was energized, meaning that electricity was flowing from the electric cables into the switchgear. While he was working on the switchgear, Young was electrocuted and died.
 {¶ 9} As a result of Young's death, appellant filed the instant complaint against Marrelli and appellee in the Court of Claims of Ohio. Appellant alleged that Marrelli acted in a willful, wanton manner and with a reckless disregard for the safety of others. After a status conference, the trial court ordered an evidentiary hearing to determine whether Marrelli was entitled to civil immunity pursuant to R.C. 2743.06(F) and 9.86. Following an evidentiary hearing, the magistrate determined that Marrelli did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, the magistrate recommended that Marrelli be granted civil immunity. Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections, adopted the magistrate's findings of fact and conclusions of law, and determined that Marrelli was entitled to civil immunity.
 {¶ 10} Appellant appeals, assigning the following errors:
I. The court of claims erred by holding that in order for a state employee to lose his personal immunity under R.C. § 9.86 he has to engage in conduct so egregious that the employment relationship was severed.
II. The court of claims erred by holding that, in order for conduct to be considered reckless, it must go so far as to evince a disposition to perversity.
III. The court of claims erred by considering the alleged conduct of the plaintiff's decedent to determine whether guy marrelli, acted in a reckless manner.
IV. The court of claims erred in not finding that guy marelli had engaged in reckless conduct, as a matter of law, under the proper legal standard for determining reckless conduct.
V. The court of claims erred by deciding that the conduct of defendant, Guy Marrelli, was not reckless, despite the existence of genuine issues of material fact that necessitate a trial of the issue after the opportunity to conduct full discovery.
VI. Based upon the evidence in the record, it was error for the court of claims to find that it was a common practice in the industry to use electrical tape to terminate connections on the type of switchgear at issue.
VII. The court of claims erred in finding that defendant, Guy Marrelli, acted within his discretion to eliminate a safety device specified in the project documents and specified by the switchgear manufacturer which evantually caused the death of Douglas Young.
VIII. The court of claims erred by finding that the conduct of defendant, Guy Marrelli, was not reckless.
IX. The court of claims erred by accepting the magistrate's decision without demonstrating that it conducted an independent review of the findings of fact and conclusions of law.
 {¶ 11} Neither party contests that Marrelli was a state employee during the period of time relevant to appellant's complaint. Whether or not a state employee is entitled to civil immunity is governed by R.C. 2743.02(F) and 9.86. R.C. 2743.02(F) provides, in pertinent part:
A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
 {¶ 12} R.C. 9.86 states, in part:
"* * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 13} A state employee's immunity is a question of law.Nease v. Med. College Hosp. (1992), 64 Ohio St.3d 396, 400. While the issue of immunity is a question of law, consideration of the specific facts is necessary. Marinucci v. Ohio Dept. ofTransportation (Jan. 18, 2000), Franklin App. No. 99AP-500.
 {¶ 14} For ease of analysis, we address appellant's assignments of error out of order. Appellant contends in her fifth assignment of error that because there were genuine issues of material fact as to whether Marrelli's conduct was reckless, the trial court erred in making an immunity determination prior to a trial on the merits. Appellant misconstrues the procedural mechanism for determining whether a state employee is immune from liability. First, to the extent that appellant suggests that a jury must resolve any factual issues associated with an immunity determination, appellant is mistaken. The Court of Claims has exclusive, original jurisdiction to determine whether a state employee is entitled to personal immunity under R.C. 9.86.Conley v. Shearer (1992), 64 Ohio St.3d 284, 287. The immunity of a state employee is a question of law and there is no right to a trial by jury. Id. at 292. The Court of Claims is the trier of fact in an immunity determination. Second, the purpose of the immunity hearing is to resolve any issues of fact that may impact the immunity determination. Here, the trial court resolved those issues of fact after an evidentiary hearing and made the immunity determination as a matter of law based upon those factual findings. This was not error.
 {¶ 15} To the extent appellant also claims that additional discovery was necessary for the immunity hearing, we note that the immunity hearing took place seven months after appellant filed the complaint. There was plenty of time for appellant to gather evidence relevant to the immunity hearing. Moreover, appellant did not request a continuance of the immunity hearing to conduct additional discovery. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 16} In her first and second assignments of error, appellant claims the trial court applied an incorrect legal standard in determining that Marrelli was entitled to civil immunity. Appellant first points out the magistrate's statement that an employee's conduct is not sufficient to subject the employee to personal immunity unless "the [conduct is] so divergent that it severs the employer-employee relationship." This statement, however, is an accurate statement of the law. See, e.g., Elliott v. Ohio Dept. of Rehab. Corr. (1994),92 Ohio App.3d 772, 775. One ground to impose personal liability on a state employee is if the employee's actions were manifestly outside the scope of the employee's employment responsibilities. R.C. 9.86. To determine whether an employee acted manifestly outside the scope of his employment, courts must assess whether the employee's conduct was so divergent that it severed the employment relationship. Elliott, supra; see, also, Caruso v.State (2000), 136 Ohio App.3d 616, 620; Campbell v. PublicUtilities Comm. (June 28, 2001), Franklin App. No. 00AP-1123. Therefore, the trial court did not err when it referenced this standard. In any event, we note that the parties stipulated that Marrelli was at all times pertinent hereto acting within the scope of his employment with appellee. Appellant's only contention was that Marrelli's conduct was willful, wanton, and reckless.
 {¶ 17} Appellant also contends that the trial court applied an erroneous standard in determining that Marrelli did not act recklessly. The terms reckless and wanton are often used together or interchangeably to describe the same type of conduct. Id., citing Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991),76 Ohio App.3d 448, 454. The magistrate, citing Roszman v. Sammett
(1971), 26 Ohio St.2d 94, noted that mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. That degree of perversity exists where an actor is conscious that his conduct will, in all probability, result in injury. Appellant correctly points out that this "disposition to perversity" language was deemed to be unnecessary to a workable definition of wanton misconduct in Hawkins v. Ivy (1977), 50 Ohio St.2d 114,117. However, even though the magistrate referenced this phrase in his decision, he correctly cited to Thompson v. McNeill
(1990), 53 Ohio St.3d 102, which contains the proper definition of reckless. In Thompson, the Supreme Court of Ohio adopted the following definition of reckless conduct:
The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
Id., at 104-105, citing Restatement of the Law 2d, Torts (1965), at 587, Section 500. Under the standard set forth inThompson, we conclude that the trial court did not err in determining that Marrelli's conduct was not wanton or reckless. Therefore, appellant's first and second assignments of error are overruled.
 {¶ 18} In her sixth assignment of error, appellant contends the magistrate erred when it found that it was a common practice to use electrical tape to terminate the connections on the switchgear at issue in this case. A reviewing court will not disturb the findings of the trial court if they are supported by competent, credible evidence. Lang v. Lang, Franklin App. No. 02AP-1235, 2003-Ohio-5445, at ¶ 10, citing C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279.
 {¶ 19} Contrary to appellant's assertion, the trial court did not find that it was a common practice to use electrical tape to terminate the connections on the switchgear at issue in this case. Rather, the trial court found that taped connections were not uncommon in the industry. This finding is supported by competent, credible evidence. Reinhold Luther, appellant's own expert witness, testified that taped connections have their place in the industry as long as they are done in accordance with established standards. He also opined that if there was sufficient space, taped connections in the present case would have been acceptable from an electrical engineering standpoint. William Anderson, Thompson's division manager, also testified that he has seen many switchgears with taped connections. In fact, he testified that taped connections, done properly, were a safe method to terminate a cable at a switchgear. Finally, Ralph Hoffman, appellee's expert witness, testified that the National Electric Code allows for taped connections and opined that such connections, if done properly, are acceptable. He also testified that he has seen taped connections in other switchgears. This testimony is competent, credible evidence to support the trial court's finding that taped connections were not uncommon in the industry. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 20} Similarly, appellant contends in her seventh assignment of error that the magistrate erred when it found that Marrelli acted within his discretion to eliminate a safety device specified in his plans for the project. However, neither the magistrate nor the trial court made such a finding. The magistrate did find that Marrelli accepted the taped connections; but, that finding does not lead us to conclude that the trial court erred or that Marrelli is not entitled to civil immunity. Accordingly, appellant's seventh assignment of error is overruled.
 {¶ 21} Appellant contends in her third assignment of error that the magistrate erred when it considered Young's own conduct in determining whether Marrelli acted recklessly. The magistrate's decision did note that Young may have been the person who decided to tape the connections or, at least he was involved in the decision-making process and assisted in taping the connections. Appellant first argues that this finding was erroneous. We disagree. William Anderson testified that the decision to tape these connections was Young's own decision. Young, the foreman of the project, advised Anderson of the problem and, also, of the solution, i.e., taping the connections. Anderson's testimony is competent, credible evidence that Young not only participated in making the decision to tape the connections but, in fact, was probably the decision maker.Lang, supra.
 {¶ 22} Appellant next argues that Young's alleged negligence is not a defense to an allegation of recklessness. Appellant correctly notes that contributory negligence and comparative negligence are not defenses to a reckless or intentional tort.Lambert v. Shearer (1992), 84 Ohio App.3d 266, 275; see, also,Wightman v. Consolidated Rail Corp. (1999), 86 Ohio St.3d 431,436 ("[C]ontributory negligence is not available as a defense where conduct in conscious disregard has been established."); see, also, Mays v. Taylor (Dec. 14, 2001), Mahoning App. No. 00-CA-209 (trial court properly removed defense of comparative negligence when determined that defendant acted recklessly). Once it is established that a defendant acted recklessly or with actual malice, evidence of a plaintiff's comparative or contributory negligence is rendered inadmissible and the trier of fact may not consider those defenses. Id.
 {¶ 23} In the case at bar, however, the purpose of the immunity hearing was to determine whether Marrelli acted in a wanton and reckless manner. The trial court did not consider Young's conduct as evidence of contributory or comparative negligence. Nor did the trial court consider Young's conduct as a defense to Marrelli's alleged wanton or reckless conduct. Rather, Young's conduct was relevant in determining how and why the switchgear connections were taped. In turn, how and why the connections were taped was relevant in determining whether Marrelli acted in a wanton and reckless manner. Therefore, the trial court did not err in considering Young's conduct, and appellant's third assignment of error is overruled.
 {¶ 24} Appellant's fourth and eighth assignments of error will be addressed together. Appellant contends in her fourth assignment of error that the trial court's decision was wrong as a matter of law when it found Marrelli was not reckless. We interpret this assignment of error as an attack on the sufficiency of the evidence supporting the trial court's decision. The standard of review for whether a civil case is supported by sufficient evidence "is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party * * *. In other words, is the verdict one which could reasonably be reached from the evidence?" Hartford Cas. Ins. Co. v. Easley
(1993), 90 Ohio App.3d 525, 530; Collier v. Stubbins, Franklin App. No. 03AP-553, 2004-Ohio-2819, at ¶ 17.
 {¶ 25} Similarly, in her eighth assignment of error, appellant contends the magistrate's decision was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co.,
supra, at syllabus. Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Caldwell v. Ohio State University, Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 56, quoting State v.Thompkins (1997), 78 Ohio St.3d 380, 387. A judgment is not against the manifest weight of the evidence merely because inconsistent evidence was presented at trial. Cf. State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. Caldwell, supra; see, also, State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on manifest weight grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the [judgment]." Caldwell, supra, quoting Thompkins,
supra, at 387.
 {¶ 26} Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is substantially greater than that necessary to make the conduct negligent. Hackathorn v. Preisse
(1995), 104 Ohio App.3d 768, 771, citing Thompson, supra. The term reckless is often used interchangeably with wanton and willful and has also been defined as a perverse disregard of a known risk. Jackson, supra, at 454. Regardless of the precise word or definition, reckless conduct is something substantially more egregious than mere negligence. See Weber v. Haley (May 1, 1998), Clark App. No. 97CA108; Rose v. Haubner (June 5, 1997), Franklin App. No. 96AP-1488.
 {¶ 27} Appellant first contends that Marrelli recklessly approved the switchgear's taped connections even though his own project specifications required load break elbows. However, there was substantial evidence that Marrelli did not act in a reckless manner. Marrelli testified that he was not aware of the taped connections until his final inspection of Thompson's work. After he discovered the taped connections, Marrelli asked whether the connections were taped properly and whether they were safe. He was told that they were safe. His acceptance of the taped connections was not reckless. He accepted the taped connections without knowledge or reason to know that the connections created an unnecessary risk of physical harm. In fact, he was told that the connections were safe and he had no reason to doubt the contractors who made the taped connections. Additionally, appellant's expert witness, Marrelli's expert witness, and William Anderson all testified that taped connections could be safe if taped properly. Construing this evidence in Marrelli's favor, we see no error in the trial court's finding that Marrelli did not act recklessly when he accepted the taped connections.
 {¶ 28} Appellant also argues that Marrelli recklessly ignored warnings that the taped connections created a substantial risk of death. However, the evidence that Marrelli was warned was not substantial or compelling. Bryan Miller testified that he attempted to contact Marrelli by phone four to six times to express his concerns about the taped connections but was unable to reach him. Ultimately, Miller wrote a letter to Marrelli in which Miller indicated that the taped connections did not make the switchgear dead front like a load break elbow would. Marrelli testified that he did not recall receiving this letter or being contacted by Miller regarding the taped connections. However, even if we assume Marrelli received this letter, the letter does not indicate that the taped connections created a substantial risk of serious injury or death as alleged by appellant.
 {¶ 29} Construing the evidence in favor of Marrelli, we find the evidence was sufficient to support the trial court's decision that Marrelli did not act recklessly. In addition, the trial court's decision is not against the manifest weight of the evidence, as this is not the exceptional case where the evidence weighs heavily against the judgment. The trial court, as the trier of fact, did not clearly lose its way. Marrelli accepted the taped connections as an acceptable method to attach energized cable to the bushings after being told by the contractor that the connections were safe. Three expert witnesses testified that taped connections were safe if done properly. Additionally, there was no evidence that Marrelli was told that the taped connections created a substantial risk of serious injury or death. Under these circumstances, it is not against the manifest weight of the evidence to conclude that Marrelli did not act recklessly. Accordingly, appellant's fourth and eighth assignments of error are overruled.
 {¶ 30} Lastly, in her ninth assignment of error, appellant contends the trial court erred by accepting the magistrate's decision without demonstrating that it conducted an independent review. We disagree. In its judgment entry adopting the magistrate's decision, the trial court stated that it considered the record, the magistrate's decision and appellant's objections. In an entry filed two weeks earlier, the trial court also noted that it had read the entire transcript of the immunity hearing. Accordingly, there is every indication that the trial court conducted an independent review of the magistrate's decision. Appellant's ninth assignment of error is overruled.
 {¶ 31} In conclusion, appellant's nine assignments of errors are overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
Bowman and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.