OPINION
{¶ 1} Appellant, B.G., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting Franklin County Children Services ("FCCS") permanent custody of her children. For the following reasons, we affirm that judgment. *Page 2 
 {¶ 2} Appellant has three children: E.G., born May 5, 1997; A.G., born September 7, 2001; and C.G., born October 1, 2002. The children's father died in December 2003 from a heart attack. Before his death, the family lived in Wapakoneta, Ohio. The local children services agency had an open case file on the family arising out of allegations of domestic violence and substance abuse. In early 2004, shortly after the father's death, appellant and her children moved to Columbus.
 {¶ 3} On April 25, 2004, officers from the Hilliard Police Department went to appellant's house and removed the children. The officers alleged that the children were being supervised by an underage runaway and that the house was an unacceptable environment. Specifically, the officers noted human waste in the carpet and a dirty diaper lying in the house. They also saw A.G. with a diaper rash and stated that all the children were hungry. The children have lived with the same foster parent since their removal.
 {¶ 4} As a result of their removal, FCCS filed a complaint on April 26, 2004, alleging that the children were neglected and dependent and requesting custody of the children. On July 21, 2004, the trial court adjudicated the children to be dependent minors. Appellant did not contest the adjudication. Days later, the trial court awarded FCCS temporary custody of the children and approved and adopted FCCS' case plan for the reunification of the family. The plan required appellant to address various issues of concern to FCCS. Significant elements of the plan required appellant to: (1) provide for all of the children's needs; (2) participate in counseling and parenting classes; (3) establish a safe and stable living environment free of physical hazards and with working utilities; (4) consistently visit with her children; (5) undergo a mental health assessment; and (6) resolve all outstanding legal issues. *Page 3 
 {¶ 5} On March 4, 2005, FCCS filed a motion for an award of permanent custody of the children pursuant to R.C. 2151.413 and 2151.414. Two months later, the parties entered into a memorandum of agreement in which appellant agreed to comply with the requirements of the case plan, and FCCS agreed to consider the withdrawal of their permanent custody motion if appellant made progress or completed the requirements of the case plan. Apparently, appellant did not make sufficient progress toward completing the case plan requirements because on December 22, 2005, FCCS filed an amended motion for permanent custody. The trial court also appointed an attorney to represent E.G. because of a conflict between E.G.'s wishes and the recommendation of the guardian ad litem.
 {¶ 6} In May and September 2006, the trial court held hearings on FCCS' motion for permanent custody. At the time, E.G. was nine, A.G. was five, and C.G. was three. They did not testify at the hearings. At the end of the hearings, appellant indicated to the court that she would not contest the grant of permanent custody of C.G. to FCCS. The trial court questioned her about the decision and found that it was a voluntary one, made in the child's best interest. Accordingly, on October 12, 2006, the trial court filed a judgment entry terminating appellant's parental rights, privileges, and obligations and awarding FCCS permanent custody of C.G. Two months later, on December 14, 2006, the trial court filed another judgment entry, in which it found by clear and convincing evidence that it was in the children's best interest to award permanent custody to FCCS. Therefore, the trial court awarded FCCS permanent custody of the children.[1] *Page 4 
 {¶ 7} Appellant appeals and assigns the following errors:
 I. THE TRIAL COURT ERRED IN FAILING TO MAKE A RECORD OF THE IN-CAMERA INTERVIEW WITH THE CHILDREN.
 II. THE TRIAL COURT COMMITTED PLAIN ERROR IN SHIFTING THE BURDEN OF PROOF TO APPELLANT TO DISPROVE THE ALLEGATIONS IN THE MOTION FOR PERMANENT CUSTODY.
 III. THERE IS INSUFFICIENT CREDIBLE EVIDENCE TO SUPPORT THE JUDGMENT OF THE TRIAL COURT WHICH IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 8} At the outset, we recognize that parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children. Troxel v.Granville (2000),530 U.S. 57, 66, 120 S.Ct. 2054; Santosky v. Kramer (1982), 455 U.S. 745,102 S.Ct. 1388. The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. In re Murray (1990),52 Ohio St.3d 155, 157. These rights, however, are not absolute. In reAwkal (1994), 95 Ohio App.3d 309, 315; In re Sims, Jefferson App. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. A parent's natural rights are always subject to the ultimate welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 106. Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child. In re Harmon (Sept. 25, 2000), Scioto App. No. 00CA-2694; In re Wise (1994), 96 Ohio App.3d 619, 624. The permanent termination of parental rights has been described as "`the family law equivalent of the death penalty in a criminal case.`" In re Hayes
(1997), 79 Ohio St.3d 46, 48, quoting In re Smith (1991),77 Ohio App.3d 1, 16. Therefore, parents "`must be afforded every procedural and substantive protection the law allows.`" Id. *Page 5 
 {¶ 9} In her first assignment of error, appellant contends the trial court erred in failing to make a record of its in camera interview of the children. On November 4, 2005, appellant requested the trial court to interview the children regarding their wishes and concerns about the allocation of parental rights. The trial court interviewed the children; however, the record does not reflect when the interview occurred.[2]
The in camera interview was apparently conducted in the presence of the guardian ad litem but without a court reporter.
 {¶ 10} There appears to be a split among Ohio appellate courts regarding whether in camera interviews of children must be recorded. Compare In re Shannon R. (Jan. 10, 2002), Cuyahoga App. No. 78811 (no error failing to record interview because record of interview not requested), with In the Matter of Roque, Trumbull App. No. 2005-T-0138,2006-Ohio-7007, at ¶ 22 (where trial court interviews child regarding potential conflict of child's wishes, interview should be recorded), andIn re Walling, Hamilton App. No. C-050646, 2006-Ohio-810, at ¶ 24
(same). Here, regardless of whether the trial court was required to record its interview of the children, appellant fails to demonstrate how she was prejudiced by the trial court's failure to record the in camera interview.
 {¶ 11} Apparently, after the interview took place, the guardian ad litem requested the trial court to appoint independent counsel for E.G. Independent counsel is required when a child's wishes conflict with the guardian ad litem's recommendation regarding placement. See In reC.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 87, citing In reSwisher, Franklin App. No. 02AP-1408, 2003-Ohio-5446 (independent counsel needed where children's wishes conflict with guardian). Therefore, the wishes of E.G. *Page 6 
expressed during the interview must have been inconsistent with the guardian ad litem's recommendation to grant FCCS permanent custody of the children. In fact, the guardian ad litem testified that E.G. wanted to live with appellant. Accordingly, with respect to E.G., appellant could not have been prejudiced by the trial court's failure to record E.G.'s statements during the in camera interview.
 {¶ 12} However, appellant claims that a transcript of the in camera interview could disclose that the other children's wishes were also inconsistent with the guardian ad litem's recommendation. We disagree.
 {¶ 13} First, C.G.'s wishes (assuming she could express them at age three) are not relevant because appellant did not appeal the judgment granting FCCS permanent custody of C.G. Second, the record reflects that A.G. (age five) was not capable of expressing her wishes. A.G.'s foster parent testified that A.G. suffered from developmental delays. Michele Whaley, the guardian ad litem, also testified that A.G. was not able to understand the concept of adoption and therefore could not express her wishes regarding her placement. Lastly, we note that in contrast to E.G., the guardian ad litem did not request independent counsel for A.G. after the in camera interview. The failure of the guardian ad litem to request independent counsel for A.G. indicates that A.G. was either unable to express her wishes or that her wishes were not inconsistent with the recommendation of the guardian ad litem.
 {¶ 14} Because appellant cannot demonstrate any prejudice from the trial court's failure to record the in camera interview of the children, her first assignment of error is overruled.
 {¶ 15} Appellant contends in her second assignment of error that the trial court improperly shifted the burden of proof to her. Appellant argues that the trial court required *Page 7 
her to provide utility bills and evidence of housing. We disagree. The trial court did not require her to prove that she had utilities in her house. Instead, during several pre-trial conferences, the trial court emphasized to appellant the importance of demonstrating that she had satisfied the requirements of her case plan, one of which was to have stable housing with utilities. At no point during the hearing did the trial court shift the burden of proof, which always required FCCS to prove by clear and convincing evidence that an award of permanent custody was in the best interest of the children. In fact, the trial court's award of permanent custody noted that clear and convincing evidence demonstrated that an award was in the children's best interest. Appellant's second assignment of error is overruled.
 {¶ 16} Finally, appellant contends in her third assignment of error that the trial court's judgment was not supported by the evidence. We disagree.
 {¶ 17} A decision to award permanent custody requires the trial court to take a two-step approach. First, a trial court must find whether any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1). *Page 8 
 {¶ 18} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361,368; Cross v. Ledford (1954), 161 Ohio St. 469.
 {¶ 19} In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D).
 {¶ 20} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy- *Page 9 Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312, at ¶ 28. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Young v. Univ. ofAkron, Franklin App. No. 04AP-318, 2004-Ohio-6720, at ¶ 25, citingCE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus.
 {¶ 21} In connection with the first step of this analysis, appellant does not dispute that the children were in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. R.C. 2151.414(B)(1)(d). For purposes of this analysis, the children entered the temporary custody of FCCS on or about June 24, 2004. FCCS filed its motion for permanent custody on December 22, 2005. At that time, the children had been in the temporary custody of FCCS for more than 12 months of a continuous 22-month period. Therefore, the trial court properly found that the requirement of R.C.2151.414(B)(1)(d) was satisfied.
 {¶ 22} Instead, appellant's third assignment of error focuses on the second step of the analysis. She contends that the trial court's decision that an award of permanent custody was in the children's best interest was against the manifest weight of the evidence because she substantially completed the requirements of her case plan. As noted, we will review the evidence to determine whether competent, credible evidence supports the trial court's best interest finding. In reG.B., Franklin App. No. 04AP-1024, 2005-Ohio-3141, at ¶ 19.
 {¶ 23} The trial court addressed each of the factors set forth in R.C.2151.414(D). In regards to R.C. 2151.414(D)(1), which addresses the children's interactions with their parents, relatives, and foster parents, the trial court noted the strong bond E.G. had with appellant. Melissa Vanfossan, the FCCS case worker, the guardian ad litem, and the *Page 10 
foster parent each testified about the bonding in the family. They noted that appellant had bonded with A.G., although not to the degree that she had bonded with E.G. The trial court also noted the bond that the children had developed with each other and with their foster parent, with whom they have lived for two years. The trial court reasoned that it would be important to maintain that bond if permanent custody was granted. The children have also bonded with the foster parent's other children.
 {¶ 24} R.C. 2151.414(D)(2) addresses the wishes of the children, as expressed directly by the children or through the guardian ad litem. The trial court noted that E.G. was inconsistent in expressing his wishes. If E.G. had a good week with appellant, he would want to live with her. If not, he would want to stay with the foster parent. The trial court noted that A.G. was too young to understand the nature of the proceedings or express her wishes concerning placement. The guardian ad litem testified that E.G.'s placement wishes varied and recommended that custody be granted to FCCS despite E.G.'s latest desire to live with appellant.
 {¶ 25} R.C. 2151.414(D)(3) concerns the custodial history of the children. In this case, the children were taken from appellant in April 2004. Ever since that date, they have lived with the same foster parent, who is a potential adoptive home.
 {¶ 26} R.C. 2151.414(D)(4) takes into account the child's need for a legally-secure placement and whether that placement could be achieved without a grant of permanent custody to FCCS. Without doubt, every child needs a legally-secure placement. The question is whether appellant can provide that placement. Evidence demonstrated that after a delay in attempting to comply with the requirements of the case plan, appellant completed a number of the case plan's requirements. She obtained stable employment, attended parenting classes, and resolved her outstanding legal issues. However, *Page 11 
Vanfossan and the foster parent testified that appellant failed to maintain consistent visitation with her children during these proceedings, demonstrating a lack of dedication to her children. Additionally, she failed to acquire stable housing for her children. This requirement was critical in appellant's case plan, as she previously lived in an unacceptable mobile home with the children, a fact that played a significant role in the removal of her children in the first instance. Vanfossan visited appellant's new home in 2006 and testified that it was not suitable housing due to the condition of the home.
 {¶ 27} Appellant's failure to comply with significant aspects of her case plan provides competent and credible evidence to support the trial court's finding that a legally-secure placement of these children could not be achieved without a grant of permanent custody to FCCS.
 {¶ 28} Finally, R.C. 2151.414(D)(5) takes into account whether certain of the R.C. 2151.414(E) findings exist. None of these factors are applicable in this case.
 {¶ 29} Given the above factors, the record reflects competent, credible evidence upon which the trial court could rely in determining that an award of permanent custody was in the children's best interest. Accordingly, the award of permanent custody to FCCS is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 30} Appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
SADLER, P.J., and BROWN, J., concur.
[1] This judgment entry indicates that it is an award of permanent custody of all three of the children, including C.G., even though the trial court previously entered a final judgment awarding FCCS permanent custody of C.G. In light of the previous final judgment entry, this judgment entry, as it relates to C.G., is a nullity, and appellant is precluded from contesting the trial court's grant of permanent custody to FCCS of C.G. because she did not timely appeal from the trial court's October 12, 2006 entry awarding permanent custody of C.G.
[2] At a hearing on January 12, 2006, the guardian ad litem noted that the trial court interviewed the children. Therefore, we can assume that the interview occurred at some point between the November 4, 2005 request and that hearing. *Page 1