[Cite as *In re A.S.*, 2021-Ohio-218.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | No. 20AP-93 |
| (A.S.), | : | (C.P.C. No. 16JU-10193) |
| (S.P., | : | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on January 28, 2021

**On brief:** *Yeura Venters*, Public Defender, and *Robert D. Essex*, for appellant.

**On brief:** *Emily L.M. Butler*, for Franklin County Children Services.

**On brief:** *Daniel W. Sullenberger*, Guardian ad Litem.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, S.P., mother of A.S., appeals from the decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, terminating her parental rights and placing A.S. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This case involves FCCS's request for permanent custody of A.S., born December 5, 2010. On August 24, 2016, FCCS filed a complaint alleging A.S. to be an abused, neglected, and dependent child. FCCS filed the complaint after receiving

information that A.S., who was five years old at the time, was the victim of both physical and sexual abuse and had lost a considerable amount of weight. Mother shared custody of A.S. with A.S. Sr. ("father"), but father had primary physical custody. Father reported to FCCS that A.S., while living with father and his girlfriend, was engaged in sexualized behavior with herself, would attempt to engage in sexualized behavior with the other children in the home, and was demonstrating concerning eating habits. Father indicated to FCCS he no longer wanted A.S. in his home because of her interactions with the other children. The complaint further stated that A.S. reported that an unnamed man at her mother's home had touched A.S.'s vagina, that her mother made her sleep on the floor, and that her mother made her eat dog food as cereal and drink urine because there was no water. During a medical exam, A.S. reported eating toilet paper and toothpaste because of hunger, and medical personnel determined A.S.'s weight loss and extreme hunger were due to environmental neglect. A.S. also reported that both mother and father had struck her with a belt.

{¶ 3} The same day FCCS filed the complaint, the trial court entered an order placing A.S. in the emergency temporary care of FCCS. The next day, August 25, 2016, the trial court conducted a preliminary hearing and found sufficient information to grant a temporary order of custody ("TOC") to FCCS. The trial court ordered mother and father to complete mental health counseling and suspended mother's and father's visitation rights with A.S.

{¶ 4} Following a November 16, 2016 hearing, the trial court granted the state's request to dismiss the abused child causes of action and issued a judgment entry that the matter would proceed uncontested as to the neglect and dependency actions. The trial court issued an order of temporary court commitment ("TCC") to be in effect until further notice of the court, and it approved and adopted a case plan for both mother and father.

{¶ 5} Prior to the scheduled annual review hearing, FCCS filed a motion on July 13, 2017, along with Permanent Family Solutions Network ("PFSN"), to extend the trial court's TCC order. FCCS stated in the motion that mother had ceased visiting with A.S., had not maintained contact with the assigned caseworker, and had not completed any objectives of her case plan which included a mental health assessment, random urine screens, and parenting classes. FCCS further alleged that father had been inconsistent with supervised

visits and had not completed his mental health assessment. The trial court conducted an annual review hearing on August 23, 2017, following which the trial court granted FCCS's motion to extend the TCC for six months.

{¶ 6} After the annual review hearing, a maternal aunt intervened in the proceedings as a potential custodial placement for A.S., but the maternal aunt ultimately was not considered for placement. On March 19, 2018, FCCS and PFSN filed a motion requesting a second extension of TCC, again alleging neither mother nor father had significantly completed their case plans. Following several continuances, the trial court, on June 15, 2018, granted the motion for the second extension of TCC for another six-month period.

{¶ 7} On August 13, 2018, the guardian ad litem for A.S. filed a motion requesting that permanent court custody ("PCC") of A.S. be granted to FCCS. Once the trial court was able to perfect service on mother and father, it set the PCC hearing for July 11, 2019. Prior to the hearing, on July 3, 2019, the guardian ad litem filed a report and recommendation that it was in the best interest of A.S. that the trial court grant the motion for PCC and that A.S. be permanently committed to FCCS.

{¶ 8} The trial court conducted a trial on the motion for PCC on November 25, 2019. Father did not participate in the trial. During the trial, mother testified she has four children but did not have custody of any of them. Mother admitted that she did not attend visits with A.S. for the nearly two-year period from April 24, 2017 to March 6, 2019 but testified she had most recently visited with A.S. the week before the trial. She further admitted that although the case plan required her to submit to drug screens, attend parenting classes, alcohol and drug class ("AOD"), and anger management classes, she had generally not complied with the requirements of the case plan other than to submit to some of the drug screens.

{¶ 9} Mother testified she struggled with stability in the past, but that her current housing was a two-bedroom apartment and that she had maintained a level of consistent employment at various restaurants, a hotel, and a hair salon. Though she testified she did not make enough money to support herself and A.S., she stated she could find another job that would provide enough. She testified she was willing to address her mental health issues, though she agreed she was not currently receiving any mental health treatment.

Mother stated she believed she had a bond with A.S. and believed they interacted well during their visits. Mother also admitted to currently using marijuana, and she testified she was not in family counseling because she had not been invited to participate.

{¶ 10} The PFSN caseworker assigned to the case testified that mother's case plan required her to complete random drug screens, parenting classes, family counseling sessions as determined by A.S.'s clinician, provide for A.S.'s basic needs, show stability in the home, and provide stable housing and permanency for A.S. The caseworker testified that mother had completed drug screens but had not completed mental health services. Further, the caseworker testified that when mother reengaged with visitations with A.S. in March 2019, A.S. appeared to enjoy the visits but that A.S. appeared less bonded to mother than her brother, who was also at the visits. The caseworker stated mother would attempt to reengage A.S. during the visits if A.S. appeared disconnected, and mother would bring arts and crafts, movies, and snacks for the children. The caseworker described mother's behavior as "appropriate" during the visits, but he testified he would not describe A.S. as being "connected" or bonded with mother. (Nov. 25, 2019 Tr. at 30, 35.) He also testified that mother had obtained housing three weeks prior to the start of trial, but he had not conducted a home visit at that time.

{¶ 11} After observing A.S. with her foster parent, the caseworker testified that A.S. appeared to be well-bonded to her foster mother. Additionally, the caseworker testified that A.S. had several treatment concerns, including taking ADHD medication and issues with hoarding. He stated PFSN had not provided any transportation assistance to mother to attend A.S.'s counseling sessions because the clinician had not yet approved mother's attendance at those sessions. The caseworker testified he believed A.S.'s need for permanency could not be achieved without a grant of permanent custody to FCCS.

{¶ 12} The guardian ad litem testified she had conducted at least 39 visits with A.S. She testified that A.S.'s physical appearance had improved from the "frail" condition A.S. was in at the opening of the case, and she described A.S. as looking healthy at the time of trial. (Nov. 25, 2019 Tr. at 67.) The guardian ad litem described A.S. as having a comfortable relationship with her foster mother and testified A.S. responded well to her. After observing six visits between A.S. and mother, the guardian ad litem testified that A.S. seemed to enjoy the visits with mother. Having visited mother's home, the guardian ad

litem testified mother's home was nice, clean, and appropriate. The guardian ad litem also described A.S.'s ongoing treatment needs, including ADHD, hoarding issues, and her history of sexual abuse that created enduring trauma. She testified that mother had not been asked to engage in family counseling with A.S. because A.S.'s treatment provider had not recommended it.

{¶ 13} The guardian ad litem testified A.S. has been in the continuous custody of FCCS for more than three years, and the trial occurred just prior to A.S.'s ninth birthday. The guardian ad litem stated she had discussed the concept of permanent custody with A.S., and A.S. consistently expressed a desire to be adopted by her foster mother. Ultimately, the guardian ad litem testified it was her recommendation that the trial court grant the motion for PCC and place A.S. in the permanent custody of FCCS.

{¶ 14} Following the hearing, the trial court granted the guardian ad litem's motion for PCC and terminated the parental rights of both mother and father. The trial court considered the factors in R.C. 2151.414(D) and determined there was clear and convincing evidence that it was in A.S.'s best interest to grant the motion for permanent custody. The trial court journalized its decision in a January 22, 2020 decision and judgment entry. Mother timely appeals.

## II. Assignment of Error

{¶ 15} Mother assigns the following error for our review:

> The trial court committed reversible error by terminating the appellant-mother's parental rights when the decision was against the manifest weight of the evidence.

## III. Analysis

{¶ 16} In her sole assignment of error, mother argues the trial court erred in granting permanent custody to FCCS. More specifically, mother asserts the decision to grant the motion for PCC was against the manifest weight of the evidence.

{¶ 17} "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is

consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

{¶ 18} "Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8. "Pursuant to R.C. 2151.414(B)(1), a trial court may grant permanent custody if after a hearing it determines, by clear and convincing evidence, that * * * such relief is in the best interest of the child." *Id.* at ¶ 9. "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established." *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 14. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.*

{¶ 19} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8.

{¶ 20} In deciding to award permanent custody, the trial court must take a two-step approach. *K.L.* at ¶ 18. The court must first determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* Here, there is no dispute that A.S. was in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period, satisfying R.C. 2151.414(B)(1)(d).

{¶ 21} Once the trial court determines that one of the circumstances in R.C. 2151.414(B)(1) applies, the trial court must then determine whether a grant of permanent custody is in the best interest of the child. *In re A.J.*, 10th Dist. No. 13AP-864, 2014-Ohio-2734, ¶ 16; R.C. 2151.414(B)(1). In determining the best interest of a child, R.C.

2151.414(D)(1) directs that the trial court must consider all relevant factors including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e).

{¶ 22} The trial court considered all of the above statutory factors with respect to A.S. and concluded that an award of permanent custody was in the best interest of the child. Mother disagrees with the trial court's conclusions. More specifically, mother argues the trial court erred in determining permanent custody was in A.S.'s best interest given the progress mother had made on her case plan objectives since the opening of the case.

{¶ 23} Mother's argument is not a challenge to any specific finding of the trial court under R.C. 2151.414(D)(1). Instead, mother argues the trial court should have placed more emphasis on her compliance with the case plan objectives. Mother's argument presupposes that the evidence at trial supported a finding that she substantially complied with her case

plan. We note, however, that the uncontroverted testimony was that mother had only submitted to some of the random drug screens expected of her, and she had not complied with the mental health, AOD, and parenting class components of the case plan. Even if this court were to construe mother's securing appropriate housing as demonstrating a level of substantial compliance with the case plan, we are mindful that " 'R.C. 2151.414(D) does not require courts to deny a children services agency's motion for permanent custody solely by virtue of a parent's substantial compliance with the case plan.' " *In re S.T.*, 10th Dist. No. 19AP-24, 2019-Ohio-4341, ¶ 26, quoting *In re Brooks* at ¶ 62. Thus, it was within the discretion of the trial court, as part of its best interest analysis, to decide the weight to give evidence of mother's compliance with the case plan. As set forth below, the evidence at trial supported the trial court's determination that granting permanent custody to FCCS was in A.S.'s best interest.

{¶ 24} Under R.C. 2151.414(D)(1)(a), the trial court must, in making its best interest determination, consider the interactions and relationships between the child and the individuals in the child's life, including the child's parents, siblings, relatives, and "any other person who may significantly affect the child." Here, the trial court found that although mother tried to establish a bond with A.S. by bringing appropriate activities to their visits, A.S. nonetheless did not have a strong bond with mother. The trial court further found that A.S is strongly bonded to her foster parent. The evidence supported these findings, including the testimony of the caseworker and the guardian ad litem who both testified A.S. was not significantly bonded with mother, and A.S. was strongly bonded to her foster parent. Additionally, the evidence demonstrated mother did not attend visits with A.S. for a nearly two-year period.

{¶ 25} Next, R.C. 2151.414(D)(1)(b) required the trial court to consider the wishes of the child. The guardian ad litem testified that A.S. repeatedly expressed a desire to remain in her current foster home and be adopted by the foster parent.

{¶ 26} R.C. 2151.414(D)(1)(c) then requires the court to consider the custodial history of the child. A.S. had been continuously in the custody of FCCS since August 2016, when she was five years old. At the time of trial, A.S. was approaching her ninth birthday. Thus, A.S. had spent a considerable portion of her life in the custody of a public children services agency.

{¶ 27} R.C. 2151.414(D)(1)(d) addresses the child's need for a legally secure placement and requires the court to consider whether this can be achieved without a grant of permanent custody to the agency. The trial court concluded mother was unable to meet A.S.'s needs and that legally secure placement could not be achieved for A.S. without an order of permanent custody to FCCS. Mother asserts that the issues in the complaint leading to A.S.'s initial placement in the custody of FCCS – A.S.'s physical and sexual abuse and her resultant eating disorder – have been remedied, and thus A.S. should be returned to mother's care. However, mother's argument discounts that the improvements in A.S.'s physical, emotional, and behavioral wellbeing occurred outside of mother's care when she was in the care and custody of FCCS receiving extensive services through PFSN, her school, and other resources. Mother's testimony demonstrated a lack of understanding of why A.S. was removed from her care in the first instance as well as a continued lack of understanding of A.S.'s ongoing treatment needs. Additionally, by the time of trial more than three years after A.S.'s placement in FCCS's custody, mother had not addressed her own mental health needs. All of this evidence supports the trial court's finding that mother had not adequately addressed the concerns which resulted in A.S.'s removal and that mother was not able to provide a legally secure placement for A.S.

{¶ 28} Finally, R.C. 2151.414(D)(1)(e) requires the court to consider any applicable factors set forth in R.C. 2151.414(E)(7) through (11). The trial court noted mother has a criminal history that includes attempted child endangering but found that no evidence was presented at trial related to a conviction of those charges. Mother advances no argument relative to this factor. The trial court noted it was also considering the guardian ad litem's recommendation that FCCS be granted permanent custody as an additional relevant factor under R.C. 2151.414(D)(1).

{¶ 29} Here, the record demonstrates the trial court thoroughly reviewed and weighed the evidence in relation to all factors relevant to determining whether granting permanent custody to FCCS was in A.S.'s best interest. Having reviewed the record, we find competent, credible evidence supported the trial court's determinations as to each of those factors and its ultimate conclusion that granting the motion for permanent custody to FCCS was in the child's best interest. Thus, because the trial court's decision to grant the motion

for permanent custody and terminate mother's parental rights was not against the manifest weight of the evidence, we overrule mother's sole assignment of error.

## IV. Disposition

{¶ 30} Based on the foregoing reasons, the trial court's decision granting the motion for permanent custody was not against the manifest weight of the evidence. Having overruled mother's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

DORRIAN, P.J., and HESS, J., concur.

HESS, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.

_____