[Cite as *In re J.W.*, 2019-Ohio-4775.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| J.W., Jr., A Minor, | : | No. 19AP-122 |
| [J.W., Jr., | : | (C.P.C. No. 15JU-13663) |
| Appellant]. | : | (REGULAR CALENDAR) |
| In the Matter of: | : | |
| J.W., Jr., A Minor, | : | No. 19AP-144 |
| [J.W., Sr., | : | (C.P.C. No. 15JU-13663) |
| Appellant]. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on November 21, 2019

**On brief***: William T. Cramer*, for appellant J.W., Jr.

**On brief:** *Yeura Venters,* Public Defender, and *Robert D. Essex*, for appellant J.W., Sr.

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1} In these consolidated appeals, appellant J.W., Jr. and appellant J.W., Sr. ("Father") appeal the February 14, 2019 decision and judgment entry from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating the parental rights of Mother[1] and appellant J.W., Sr. and granting permanent custody of J.W., Jr. to Franklin County Children Services ("FCCS").

---

[1] J.W., Jr.'s Mother did not file an appeal.

## I.  Facts and Procedural History

{¶ 2}   J.W., Jr. was born on February 20, 2008.   J.W., Jr. has been in the continuous custody of FCCS since August 27, 2015 when a temporary order of custody was obtained.  FCCS initially became involved when Mother arrived with the children[2] at the Young Men's Christian Association ("YMCA") shelter and advised they had been living in the woods.   At that time, Mother agreed to place the children in respite care but failed to provide the medication J.W., Jr. required for his mental and physical health.

{¶ 3}   On November 6, 2015, FCCS filed a complaint alleging that J.W., Jr. was a neglected child, pursuant to R.C. 2151.03(A)(2), and a dependent child, pursuant to R.C. 2151.04(D).  The complaint alleged that the whereabouts of both Mother and Father were unknown, and that Father had a criminal history.

{¶ 4}   On January 26, 2016, J.W., Jr. was adjudicated dependent and in an entry filed February 1, 2016, the trial court issued a temporary court commitment ("TCC") to FCCS.  In the same entry, the trial court also adopted a case plan.  The case plan required Mother to maintain contact with FCCS and the children, have a legal source of income and ensure the child's basic needs were met, complete an alcohol and other drugs ("AOD") assessment, follow any recommendations from the AOD assessment, submit to drug screens, have stable housing, and sign all information releases requested by the agency. The case plan required Father to maintain contact with the children and FCCS, complete an AOD assessment, have proof of a legal source of income, and stable housing.

{¶ 5}   On August 25, 2016, the court held an annual review hearing.  At the hearing, the court extended the TCC for six months.  In addition, the case plan was updated to require both Mother and Father to complete AOD assessments and follow through with any treatment recommendations, and to complete walk-in drug screens free of substance abuse. Further, Father was specifically required to refrain from engaging in illegal activity.

{¶ 6}   On December 30, 2016, FCCS filed its motion seeking permanent custody of J.W., Jr.

{¶ 7}   On June 13, 2017, counsel for Father filed a motion to appoint counsel for J.W., Jr. or, in the alternative, for the court to conduct an in-camera interview.   On

---

[2] J.W., Jr. has an older sister, A.S., who was born in October 2005.  A.S. has the same Mother as J.W., Jr. but is not the child of appellant J.W., Sr.  A.S. is not a subject of this appeal.

October 24, 2017, the court conducted an in-camera interview of J.W., Jr., during which he indicated he wanted to go home to his Mother, but did not know why. He also stated he would like to see his sister, his Mother, and his Father. After the in-camera interview, the court appointed a new guardian ad litem ("GAL") and the former GAL was appointed counsel for J.W., Jr.

{¶ 8} Subsequently, during a January 23, 2018 hearing, the GAL requested a continuance of the trial on the motion for permanent custody to give both Mother and Father an opportunity to commence inpatient drug rehabilitation programs to treat heroin addiction. The GAL noted that both children had a "strong, strong bond with the parents, especially the little boy." Mother and Father joined the motion, FCCS opposed it, and the court granted the motion. The record does not indicate whether inpatient drug rehabilitation was ever completed by either Mother or Father.

{¶ 9} On February 12, 2019, the matter finally proceeded to trial. Father appeared via teleconference because he was incarcerated. Despite the fact that Mother had joined in the January 23, 2018 motion for a continuance of the trial on the motion for permanent custody, she failed to appear, and her attorney had already been granted leave to withdraw from the case based on lack of contact with or instructions from Mother. Further, Mother had missed all court dates since February 2018.

{¶ 10} At the trial, FCCS presented the testimony of Rochelle Gallagher, the FCCS caseworker. Jonathan Klein, the GAL, also provided testimony. No other testimony or evidence was presented.

{¶ 11} Ms. Gallagher gave testimony on the background of the case and explained the initial case plan that was developed as discussed above. She first testified as to the status of the case plan as it pertained to Mother and her essential lack of compliance with the case plan. She further testified that the last visit Mother had with J.W., Jr. was in September 2017 and the last telephone contact with him was in August 2018.

{¶ 12} Ms. Gallagher then gave testimony that Father did complete an AOD assessment but did not follow through with the recommended treatment, nor did he complete drug screens. She also explained that at the time of the trial Father was incarcerated on drug possession and forgery charges with an expected release date of December 2019. She further testified that prior to his incarceration, Father had failed to

maintain consistent visitation. Ms. Gallagher also testified that although relatives had been contacted, the possibility of a relative placement never came to fruition.

{¶ 13} Ms. Gallagher then provided testimony concerning J.W., Jr. as follows. She testified he was originally hospitalized due to extreme mental health and behavioral concerns, and had been at Belmont Pines from December 2015 to December 2016, when he transferred to Hannah Neil, where he remained until June 2018. From June 2018 until August 2018 he was placed at St. Vincent, after which he was placed into a foster home. J.W., Jr. is bonded with his foster mother, but the foster home is not a potentially adoptive home.

{¶ 14} Gallagher further testified that J.W., Jr. has been diagnosed with attention deficit hyperactivity disorder ("ADHD"), chronic post-traumatic stress disorder ("PTSD"), a seizure disorder, a mood disorder, a developmental disorder and a pervasive learning disorder, and that he takes medications. He has issues with bullying others, bathroom and sanitary issues, stealing, and sexualized behavior. He goes to counseling weekly and also utilizes psychiatric services.

{¶ 15} Following the testimony of Gallagher, testimony was provided by Klein. He testified that he had been the GAL for J.W., Jr. and his sister since November 2017. He stated he had seen J.W., Jr. approximately eight times. He also testified he had observed one visit between J.W., Jr. and Mother and Father, that the visit went well and that they seemed bonded. The GAL testified that his recommendation was the motion for permanent custody be granted primarily based on the facts that Father was in prison and Mother could not be located.

{¶ 16} Immediately following the presentation of the foregoing evidence and the admission of exhibits, the trial court orally granted FCCS's motion without hearing closing arguments. Counsel for appellant J.W., Sr. formally objected to not being permitted to present a closing argument. Counsel for appellant J.W., Jr. did not make an objection. In ruling on the objection made by counsel for appellant J.W., Sr., the trial court stated "[c]losing arguments are not evidence, and since you didn't present any, the Court will take your objection under note, but that closing argument is not required because it is not evidence."

{¶ 17} Following the hearing, on February 14, 2019, the trial court issued a decision and judgment entry sustaining FCCS's motion for permanent custody and divesting the parents of their parental rights. The trial court considered each of the factors in R.C. 2151.414(D) and determined there was clear and convincing evidence that it was in J.W., Jr.'s best interest to grant the motion for permanent custody.

{¶ 18} These timely appeals followed.

## II. Assignments of Error

{¶ 19} Appellant J.W., Jr. raises one assignment of error in his appeal:

> The trial court did abuse its discretion by granting the Franklin County Children Services Motion for Permanent Custody of the minor children.

{¶ 20} Appellant J.W., Sr. raises one assignment of error in his appeal:

> The trial court abused its discretion to the prejudice of the appellant when it refused to allow appellant's counsel to make a closing argument depriving him of his right to the effective assistance of counsel and his right to Due Process under the Fourteenth Amendment and Article I, Section 16 of the Ohio Constitution.

## III. Standard of Review

{¶ 21} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28; *In re B.B.H.*, 10th Dist. No. 14AP-882, 2015-Ohio-2347, ¶ 14. "Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence." *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8. Accordingly, an appellate court " 'will not overturn a permanent custody order when it is supported by competent, credible evidence.' " *In re M.W.*, 10th Dist. No. 11AP-524, 2011-Ohio-6392, ¶ 20, quoting *In re Siders*, 10th Dist. No. 96APF04-413, (Oct. 29, 1996), citing *In re Brofford*, 83 Ohio App.3d 869, 876-77 (10th Dist.1992). Further, "[i]n reviewing a judgment granting permanent custody to FCCS under the manifest weight standard, ' "an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' " ' " *In re E.B.*, 10th Dist. No. 16AP-352, 2017-Ohio-2672, ¶ 19, citing *In re K.M.*, 10th Dist. No. 15AP-64,

2015-Ohio-4682, ¶ 13, quoting *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37. " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' " *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

## IV.  Discussion

{¶ 22}  "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children."  *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  The Supreme Court of Ohio likewise has recognized the essential and basic right of a parent to raise his or her child.  *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. "Parental rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child." *In re E.B* at ¶ 19, citing *In re K.M.* at ¶ 15, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).  In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child.  *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 23}  R.C. 2151.413 permissively allows a public agency to file a motion requesting permanent custody of a child under certain circumstances. When the child has been in the temporary custody of a public agency for 12 or more months out of a consecutive 22-month period, though, the agency *must* file for permanent custody. R.C. 2151.413(D)(1).

{¶ 24}  R.C. 2151.414(B)(1) permits a court to grant permanent custody of a child to a public agency if, after a hearing, it determines "by clear and convincing evidence, that '(1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (d) exist, and (2) such relief is in the best interest of the child.' " *In re E.B.* at ¶ 22, quoting *In re K.M.*, 10th Dist. No. 15AP-64, 2015-Ohio-4682, ¶ 14.  Thus, "[a] decision to award permanent custody requires the trial court to take a two-step approach." *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 18. "First, a trial court must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply."  *Id.*  Second, the court determines whether granting permanent

custody to FCCS is in the best interest of the child. *Id.* at ¶ 20. Clear and convincing evidence means evidence that creates a firm belief or conviction as to the facts sought to be established. *In re E.B.* at ¶ 22, citing *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42; *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *In re K.L.* at ¶ 14.

{¶ 25} Relevant to this appeal, R.C. 2151.414(B)(1) provides the following circumstances under which FCCS can move for permanent custody:

> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

{¶ 26} In this case, it is undisputed that J.W., Jr. was in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. Thus, the statutory factor in R.C. 2151.414(B)(1)(d) was established by clear and convincing evidence.

{¶ 27} Next, in determining the best interest of a child, R.C. 2151.414(D)(1)(a) through (e) sets forth the relevant factors that the court must consider in determining what is in the best interests of the child:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D) does not give any one factor "greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 28} In this case, the evidence at trial overwhelmingly supported the trial court's conclusion that granting permanent custody to FCCS was in J.W., Jr.'s best interest. Under R.C. 2151.414(D)(1)(a), the trial court was required to consider the interactions and relationships between the child and the individuals in the child's life, including the child's parents, siblings, relatives, and "any other person who may significantly affect the child." Here, the trial court found that the child had not been in placement with his half-sibling and that Mother (who is not a party to these appeals) had inconsistent parenting time and her last visit with the child was in September of 2017. The trial court further found that Father's last visit was in March 2018. The evidence supported these findings. Therefore, the "interaction and relationship" factor weighed in favor of awarding permanent custody to FCCS.

{¶ 29} R.C. 2151.414(D)(1)(b) required the trial court to consider the wishes of the child, expressed either directly by the child or through the child's guardian ad litem. In this case, as noted previously, and as the trial court found, the wishes of the child were in conflict with the recommendations of the GAL; therefore, the child had legal counsel to represent his wishes. The court further found that the GAL filed a report on August 7, 2018 and on February 8, 2019, and that he recommends the motion for permanent custody be granted. The evidence supported the foregoing findings, and although the child's wishes were in conflict with the recommendation of the GAL, this factor nonetheless weighs at least somewhat in favor of the trial court granting permanent custody to FCCS.

{¶ 30} R.C. 2151.414(D)(1)(c) required the trial court to consider the custodial history of the child. In this case, the trial court found that FCCS was granted a temporary order of custody of the child on August 27, 2015 and he has been in the custody of FCCS for more than 12 months in a consecutive 22-month period. The trial court further found that he has been in four different foster homes and was referred to residential treatment due to mental health diagnoses of ADHD, PTSD, mood disorder, and speech and language disorders. The trial court further found that he had been in three residential treatment facilities, from December 2015 until August 2018 when he was moved to foster home placement, but is not in an adoptive home. The trial court also found he continues to have

weekly counseling and bi-weekly psychiatric therapy.  Finally, the trial court found the child has sexualized behaviors and requires constant monitoring to ensure that he does not assault another child.  The foregoing findings are supported by the evidence and this factor weighs in favor of awarding permanent custody to FCCS.

{¶ 31} R.C. 2151.414(D)(1)(d) addresses the child's need for legally secure permanent placement and required the court to consider whether this could be achieved without a grant of permanent custody to FCCS.  Here, the trial court found that the child had never been placed with a relative, despite efforts having been made in this regard.  The trial court further found the child's current foster home was not interested in adoption.  The trial court also found that J.W., Jr. is not old enough to be placed in Planned Permanent Living Arrangement and he has significant treatment needs.

{¶ 32} Moreover, the trial court found that Mother had failed to appear for any hearing since February 2017, that Father is incarcerated with an expected release date of December 2019, and no relative had filed a motion for custody or had otherwise had an approved home study or ICPC.  The foregoing findings are all supported by evidence in the record.  Therefore, evidence in the record supported the trial court's conclusions that neither parent could meet the basic needs of the child, the child needs a legally secure permanent placement as required by statute and such a placement cannot be achieved without a grant of permanent custody to FCCS.

{¶ 33} Lastly, under R.C. 2151.414(D)(1)(e), the trial court was required to consider  any applicable factors set forth in R.C. 2151.414(E)(7) through (11), which include: (1) whether the parent has been convicted of or pled guilty to various crimes; (2) whether the parent withheld medical treatment or food from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drugs; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.  Here, the trial court indicated that it had considered these factors and neither appellant challenges such consideration.

{¶ 34} In sum, the record demonstrates the trial court properly reviewed and weighed the evidence pertaining to all factors relevant to determining whether granting permanent custody to FCCS was in J.W., Jr.'s best interest.  Upon our review of all the evidence presented at trial in this case, we determine that there is competent and credible

evidence to support the trial court's conclusion that a permanent commitment is in J.W., Jr.'s best interest and in accordance with the law. The trial court's decision is not against the manifest weight of evidence.

{¶ 35} Furthermore, any error on the part of the trial court in not allowing closing argument by either appellant was harmless error. No prejudice to either appellant resulted from any purported error because presenting closing arguments would not have changed the outcome in this case. This is so because the evidence overwhelmingly supports the trial court's decision, and nothing counsel could have said during closing argument would have altered the ultimate conclusion in this particular case.

{¶ 36} Nevertheless, we are concerned by the fact that the trial court orally pronounced its judgment at the close of the hearing without affording counsel the opportunity to present closing arguments. We observe that we have stated previously that the better practice is to permit the parties to give a closing argument in a permanent custody hearing. *In re Williams*, 10th Dist. No. 00AP-973 (March 20, 2001) *11-12. We definitively reiterate this better practice in order to provide guidance for future proceedings.

{¶ 37} In conclusion, we overrule the assignment of error presented by appellant J.W., Jr., we overrule the assignment of error presented by appellant J.W., Sr., and we affirm the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of J.W., Jr. to FCCS.

*Judgment affirmed.*

BROWN and BRUNNER, JJ., concur.

———————————