[Cite as *21AP-631; 21AP-632*, 2022-Ohio-3627.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| [In re A.M., | : | | |
| O.A., | : | No. 21AP-631 | |
| Appellant.] | | (C.P.C. No. 19JU-3035) | |
| | : | | |
| | : | (REGULAR CALENDAR) | |
| [In re S.M., | : | | |
| OA., | : | No. 21AP-632 | |
| | | (C.P.C. No. 19JU-3052) | |
| Appellant.] | : | (REGULAR CALENDAR) | |

D E C I S I O N

Rendered on October 11, 2022

**On brief:** *William T. Cramer*, for appellant O.A.

**On brief:** *Sharon K. Carney*, for appellee Franklin County Children Services.

**On brief:** *Campbell Law, LLC,* and *April F. Campbell*, for appellees A.M. and S.M.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1} Mother, O.A., appeals the October 28, 2021 judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the May 8, 2020 motions filed by defendant-appellee, Franklin County Children Services (the "Agency"), terminating her parental rights regarding the minor children A.M. (dob 06/10/2017) and S.M. (dob 05/10/2018) and awarding permanent custody to the Agency. She asserts a single assignment of error with the trial court's judgment, and contends that

"[t]he weight of the evidence does not support the termination of appellant's parental rights as to the children and award of permanent custody of the children to the agency."

{¶ 2} A.M. was born to Mother O.A. and Father C.M. on June 10, 2017, and S.M. was born to Mother O.A. and Father C.M. on May 10, 2018. An older brother, P.J.M., was placed in the legal custody of foster parents on May 25, 2017, and another older sibling, J.A., was placed in the legal custody of the maternal grandmother on September 14, 2015. Accordingly, the Agency has been involved with the family for some time. Relevant to the current motions, the family began working with the Agency when S.M. was born prematurely, as she tested positive for cocaine and marijuana at that time. The Agency received a temporary order of emergency custody for A.M. and S.M. in September 2018 and the children were placed in a foster home in December 2018. The case was dismissed and refiled twice, but the children remained in the custody of the Agency and in the same foster home placement throughout. Following a June 5, 2019 hearing, Mother admitted to a finding of dependency as to A.M. and a finding of abuse as to S.M. The trial court ordered that both children be placed in the temporary court custody of the Agency, the court further adopted case plans for both children with requirements for Mother and Father and the goal of reunification. A first extension of temporary custody as to both children was ordered on December 17, 2019.

{¶ 3} The Agency filed motions for permanent custody of both children on May 8, 2020. The motions were tried on February 17, and August 23, 2021. Mother did not appear on either date, and Father did not appear on the second and final trial date. On August 24, 2021, the Agency's counsel submitted proposed findings of fact and conclusions of law to the trial court, and on October 28, 2021, the trial court issued its order granting both motions. (*See generally* Jgmt. Entry Granting Permanent Custody.)

{¶ 4}    The case plan, as adopted by the court, required Mother to: (1) provide for the children's basic, safety, and protective needs; (2) complete an alcohol and drug assessment and follow recommendations therefrom; (3) complete random drug screens; (4) maintain stable housing and employment; (5) maintain open communication with the Agency; and (6) make herself and the children available to the caseworker on a monthly basis for the life of the case. *Id.* at 16. Based on the testimony of the caseworker and other evidence presented at trial, the trial court found that mother had failed to comply with each of those case plan requirements. *Id.* at 17-19. Father's compliance with his case plan objectives was somewhat better, but the court ultimately concluded that he failed to complete a required domestic violence assessment and follow recommendations therefrom, he failed to comply with the court's order to complete random drug screens, he failed to complete the recommended alcohol and drug recommendations as ordered, and he failed to make himself available to the caseworker as ordered. *Id.* at 19-25.

{¶ 5}    The court also found Mother either attempted to attend or attended most visits prior to October 6, 2020, but that she was arrested following a visit on that date and has not visited the children in person since that time, although she has spoken to them on the phone during Father's intermittent visits. Similarly, at the time of trial Father had missed numerous visits, and on the last day of trial Father had not visited with the children for over one month.

{¶ 6}    A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence. Accordingly, an appellate court will not overturn a permanent custody order when it is supported by competent, credible evidence. Further,

in reviewing a judgment granting permanent custody to the Agency under the manifest weight standard, an appellate court must make every reasonable presumption in favor of the judgment and the trial court's findings of facts. If the evidence is susceptible of more than one construction, the court of appeals must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the juvenile court's verdict and judgment. *See generally In re J.W.*, 10th Dist. No. 19AP-122, 2019-Ohio-4775, ¶ 21. (Citations and quotations omitted.)

{¶ 7} Moreover, parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. But parental rights are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. Accordingly, the state may terminate the parental rights of natural parents, but such termination must be in the best interest of the child. (Citations and quotations omitted.) *See generally id.* at ¶ 22. R.C. 2151.413 authorizes a public children services agency to file a motion requesting permanent custody of a child for which it has temporary custody, and when the child has been in the temporary custody of a public agency for 12 or more months out of a consecutive 22-month period, the agency is required to file a permanent custody motion. R.C. 2151.413(D)(1), cited in *J.W.* at ¶ 23. R.C. 2151.414(B)(1) permits a court to grant permanent custody of a child to a public agency if, after a hearing, it determines by clear and convincing evidence, that "(1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (d) exist, and (2) such relief is in the best interest of the child." *In re K.M.*, 10th Dist. No. 15AP-64, 2015-Ohio-4682, ¶ 14. "Clear and convincing evidence" is "more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *J.W.* at ¶ 23, quoting *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 14. Rather, it means evidence that produces a firm belief or conviction as to the facts sought to

be established. *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 8} Thus, "[a] decision to award permanent custody requires the trial court to take a two-step approach." *K.L.*, at ¶ 18. "First, a trial court must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply," and second, the court determines whether granting permanent custody to the Agency is in the best interest of the child. *Id.* at ¶ 18-20. Relevant to this appeal, R.C. 2151.414(B)(1) provides the following circumstances under which the Agency is authorized to file a motion for permanent custody:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

Once it is established that one of the R.C. 2151.414(B)(1) circumstances is met, a trial court ruling on a motion for permanent custody must determine whether permanent custody is in the best interest of the child. R.C. 2151.414(D)(1)(a) through (e) set forth the relevant factors that the court must consider in determining what is in the best interests of the child, and all of these factors are of equal importance under the statute. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)

{¶ 9} Here, the trial court concluded that under the first part of the permanent custody test and pursuant to R.C. 2151.414(B)(1)(a), the evidence established that both A.M. and S.M. "have been in the Agency's custody for 12 or more months [and therefore the Agency] need not also prove that the Children could not or should not be placed with any of the parents within a reasonable time or that the Children were abandoned." (Jgmt. Entry Granting Permanent Custody at 32.) We can find no fault in this conclusion, and Mother does not contest it on appeal.

{¶ 10} Accordingly, we move on to the second part of the permanent custody test, the best interest factors. And pursuant to R.C. 2151.414(D)(1), the court found the following:

> *Interaction and Interrelationship* - Caseworker [L] and the GAL testified that [A.M.] and [S.M.] are bonded to Mother and Father. The Children have had some interaction with some of their siblings and other relatives during visits with Mother and

Father. The Children are also bonded to one another. [A.M.] and [S.M.] have been placed in their current foster home since December of 2018. The Children are most bonded to their foster mother. The Children and the foster mother demonstrate love for each other, the foster mother teaches and engages the Children at an age-appropriate level and the Children are comfortable with their foster mother. The foster mother wishes to adopt the children.

*The Children's Wishes* - The Court finds by clear and convincing evidence that the wishes of [A.M.] and [S.M.] have not been expressed directly by the Children or by their counsel. As of the conclusion of the trial, [A.M.] is 4 years old and [S.M.] is 3 years old.

Counsel for Father requested that the Court appoint counsel for the Children based on Father's belief that the Children wished to reunify with him, in conflict with the GAL's recommendation for PCC. Attorney Erik Stewart was appointed after the first day of trial. Mr. Stewart requested and received a trial transcript of the initial day of trial and stated on the record that he had an opportunity to review that transcript and meet with the Children. Mr. Stewart indicated that the Children are too young to express their wishes, but he did not feel that they would object to PCC. He was able to ascertain that the Children have a positive relationship with Father and are exceptionally bonded to their foster mother. Attorney Stewart did not oppose PCC. The GAL recommended that the motions for PCC be granted.

*Custodial History* - The Court finds by clear and convincing evidence that the Children have been in the temporary custody of one or more public children services agencies or private child placing agencies more than 12 months as of trial. The motions for permanent custody were filed on May 8, 2020 and do assert that the Children had been in agency custody for more than 12 months of a consecutive 22-month period as of the time the motions were filed. The Children have remained in the same foster home since their removal on December 19, 2018.

*Need for a Legally Secure Permanent Placement* - The Court finds by clear and convincing evidence that [A.M.] and [S.M.] are in need of a legally secure permanent placement and that this cannot be achieved without a grant of permanent custody to the Agency. No parent has sufficiently resolved the issues leading to removal to reunify with the Children. The Children have no special needs. The Children are placed together in one foster home and the foster mother wishes to adopt both [A.M.]

and [S.M.] There are no relatives available for placement. Caseworker [L.] recommended that the Agency's motions for permanent custody of the Children be granted.

The Court observed Father's testimony on February 17, 2021 and determined that additional time should be allotted to give him a meaningful chance to demonstrate sobriety and his parenting skills during home visits with the Children. Unfortunately, this opportunity did not result in Father's deliberate completion of all outstanding case plan objectives. Father actually moved farther away from case plan completion, based on his drug screen absences and positive results and his missed visitation, as time passed between the first day of trial on February 17, 2021 and the final day of trial on August 23, 2021. Father did not appear for the final day of trial and offered no explanation through counsel. Further, since Mother did not appear for either day of trial or several status conferences in between, and her whereabouts are currently unknown, she also has not moved close to case plan completion. It is unreasonable to expect that either parent will be willing and able to reunify with the Children within any reasonable time since so little has been achieved during the past 32 months that these Children have lived in foster care.

*(E)(7) to (11) Factors* - While some evidence of abandonment (E)(10) was presented, this was not expressly included in the Agency's motions for permanent custody. Given the adequacy of all other best interest factors to support the conclusion that permanent custody is in the best interest of the Children, the Court need not determine if abandonment was established.

*Id.* at 29-31.

{¶ 11} In her appeal, Mother does not object to any of the court's factfinding, its conclusions that she failed to complete her case plan objectives, or that she has failed to visit with the children since her arrest a year earlier. Instead, Mother simply argues that she should be given more time to complete her case plan objectives, because she "is clearly struggling with a drug problem" and "could be successful if given enough time." (Brief of Appellant at 23.)

{¶ 12} Unfortunately, more time to resolve her issues is exactly what Mother does not have. A.M. and S.M. have been in the care of the Agency for over three and one-half years at the time of this writing, and were in custody for nearly three years at the time the trial concluded. Under Ohio law, a county children services agency is generally required to seek permanent custody once a child has been in its custody for 12 of the preceding 22-months. R.C. 2151.413(D)(1). And once it is proven that the child has been in custody for that period, absent some extraordinary circumstance the only remaining question for the court to consider is whether a grant of permanent custody is in the best interest of the child. Here, based on factual findings that Mother does not contest, the trial court concluded "the best option for [A.M.] and [S.M.] to have full lives is that they be adopted, and that granting the motions for permanent custody is in their best interest." (Jgmt. Entry Granting Permanent Custody at 31.) The trial court therefore determined that "the Agency has presented clear and convincing evidence that prove the statutory basis for the 'two prongs of the permanent custody test,' " and accordingly granted both motions for permanent custody. *Id.* at 32. We can find no error in that determination, particularly given Mother's lack of participation in the proceedings below and the uncontested strength of the bond between the children and their foster mother.

{¶ 13} For these reasons, we overrule Mother's single assignment of error and affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch granting the Agency's motions for permanent custody in both cases.

*Judgments affirmed.*

DORRIAN and JAMISON, JJ., concur.

————————