OPINION
{¶ 1} Appellant, Donna R. Dailey, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, sustaining the motion of appellee, Franklin County Children Services ("FCCS") for permanent custody of appellant's minor child, Qu'Shaunda Renee' Dailey ("Qu'Shaunda").
 {¶ 2} Qu'Shaunda was born on August 19, 2002. Due to appellant's use of drugs, crack, cocaine, and alcohol, Qu'Shaunda was removed from appellant's care directly from the hospital and placed in the temporary custody of FCCS. Because of her drug addiction, appellant did not visit Qu'Shaunda from April 21 through December 15, 2003. FCCS filed a motion for permanent custody of Qu'Shaunda on October 31, 2003. Ms. Tina Reeves, Qu'Shaunda's maternal aunt, filed a motion for custody on May 3, 2004. At trial on November 1, 2004, Ms. Reeves' attorney informed the court that due to Ms. Reeves' problems concerning FCCS and her own children, the home study of Ms. Reeves resulted in her not being approved. Therefore, Ms. Reeves' file was closed.
 {¶ 3} Mr. Wayne Denham was named as Qu'Shaunda's putative father; however, he has denied this and paternity has not been established. Mr. Denham has not participated in any of the hearings regarding Qu'Shaunda, but has participated in proceedings regarding Qudeshia Denham, Qu'Shaunda's sibling and the biological child of Mr. Denham and appellant. Qudeshia is also in the temporary custody of FCCS. In addition to Qu'Shaunda and Qudeshia, appellant has two other children, one of which is in the temporary custody of FCCS, and one of which is in the legal custody of the child's father. Appellant has not lived with any of her children since "2002, 2003." (Tr. 8.)
 {¶ 4} Since August 2002, when Qu'Shaunda entered the temporary custody of FCCS, appellant has failed to complete several treatment programs and tested positive for cocaine in drug screens. However, in June 2004, appellant went to Maryhaven for inpatient treatment. After Maryhaven, in August 2004, appellant went to Amethyst, a potential five-year treatment program, where she remained in treatment at the time of the trial on November 1, 2004.
 {¶ 5} On November 19, 2004, the trial court issued a permanent custody judgment entry ordering permanent custody to FCCS. This appeal followed. Appellant raises the following three assignments of error:
[1.] The Trial court Erred in Ordering Permanent Commitment to the Franklin County Children's Services Because the Agency Failed to Prove its Case by Clear and Convincing Evidence as required by O.R.C. Section2151.414(B)(1), Because the Holding was not supported by Sufficient Evidence, and because the Holding was against the Manifest Weight of the Evidence.
[2.] The Trial court Erred and Abused its Discretion by Granting Permanent Custody Without Considering the Reasonable Accommodation Requirements of the Americans With Disabilities Act (ADA),42 U.S.C. Section 12132, and the Rehabilitation Act of 1973,29 U.S.C. Section 794.
[3.] The Trial Court Erred in Ordering Permanent Commitment under O.R.C. Sections 2151.413 and 2151.414, Because it is Unconstitutional in Part.
 {¶ 6} In her first assignment of error, appellant asserts that the trial court erred in granting permanent custody to FCCS as there was insufficient evidence to support the judgment and the judgment was against the manifest weight of the evidence. It is well recognized that the right to raise a child is a basic and essential civil right. In reHayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to parental rights being terminated. Id. A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 03AP-1231, 2004-Ohio-3312.
 {¶ 7} "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Young v.Univ. of Akron, Franklin App. No. 04AP-318, 2004-Ohio-6720, at ¶ 25, citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus. "Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" Caldwell v. The Ohio State University, Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 59, quoting State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 8} A judgment is not against the manifest weight of the evidence merely because inconsistent evidence was presented at trial. State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." Estate of Barbieri v. Evans (1998), 127 Ohio App.3d 207, 211
(citation omitted). Reversing judgment on manifest weight grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the [judgment]." Thompkins, supra, at 387, quotingMartin, supra.
 {¶ 9} In order to terminate parental rights, the movant must prove by clear and convincing evidence that (1) the child's best interests are served by a grant of permanent custody to FCCS, and (2) one of the four factors enumerated in R.C. 2151.414(B)(1). In re M.B., Franklin App. No. 04AP-755, 2005-Ohio-986. Clear and convincing evidence is that measure of degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence, but does not require proof beyond a reasonable doubt. Id.
 {¶ 10} R.C. 2151.414(B)(1) governs the determination of termination of parental rights proceedings. R.C 2151.414(B)(1) states:
Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(a)The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b)The child is abandoned.
(c)The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d)The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 11} In determining whether permanent custody is in the best interest of the child, R.C. 2151.414(D) states:
(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and outof-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 12} The trial court found that "the child cannot be placed with either parent within a reasonable time or should not be placed with either parent within a reasonable time or should not be placed with either parent in the foreseeable future." (Nov. 19, 2004, Judgment Entry, at 9.) Further, the court found that it is in the best interest of the child to permanently commit the child to FCCS. According to the trial court's judgment entry, the court found that the child's custodial history is foster care from birth to the date of trial, being 26 continuous months, and that the child needs permanent placement. Further, the court found that the "uncertainty of the [appellant's] addiction recover[y] favors permanent custody" due to appellant's "22 month delay in sobriety and several failed previous efforts." Id. at 7. Additionally, the trial court found a reasonable probability of the child being adopted because of the child's young age and progress with developmental delays. The trial court found that the child needs to be adopted, and that this cannot be achieved without awarding permanent custody to FCCS. Appellant argues that the trial court erred in granting permanent custody to FCCS as there was insufficient evidence to support the judgment and the judgment was against the manifest weight of the evidence.
 {¶ 13} We find that competent, credible evidence exists to support the trial court's judgment. Appellant became addicted to drugs when she was 21 years old, and has been battling said addiction for nine years. Appellant has four children, none of whom reside with her. Three of the children, including Qu'Shaunda, are in foster care and one is in the legal custody of its father. Qu'Shaunda was removed from appellant's care directly from the hospital in August 2002, due to appellant's drug addiction. Appellant has always had a visitation schedule with Qu'Shaunda; however, appellant did not visit her at all between April 21 and December 16, 2003, a continuous period of approximately 200 days.
 {¶ 14} Appellant either did not seek treatment or failed at treatment since the time of Qu'Shaunda's birth, and has only achieved sobriety in the four months prior to trial on November 1, 2004. Appellant is not employed and does not have independent housing. When asked if appellant feels the child has bonded with her, appellant replied, "Um, somewhat, yeah." (Tr. 15.) Additionally, the following exchange took place:
Q. You heard Katrina testify about what she thinks about the level of bonding and — and what she sees. What do you feel is — is the case regarding your bonding with the child?
A. My bonding with my child. I mean, we're not real close, but we have a little bond. There is a little bond. She knows who I am.
Id. at 39.
 {¶ 15} Katrina Couch, the child welfare caseworker for FCCS, testified that she has been the caseworker in this matter since Qu'Shaunda entered the care of FCCS after her birth in August 2002. Ms. Couch testified that while a reunification case plan was developed, appellant failed to regularly visit the child, tested positive for cocaine in random drug screens, and failed several treatment programs. And, while Ms. Couch testified that at this time appellant interacts appropriately with Qu'Shaunda and has begun regular visits, Ms. Couch answered "no" when asked if appellant and the child were bonded. Id. at 22. Ms. Couch recommended permanent custody so that the child can have a permanent home "now rather than later." Id. at 27. The child appears to have some developmental delays, however, they are not of concern to Ms. Couch because of the significant progress the child has made since attending MRDD preschool.
 {¶ 16} While there is a possibility of appellant's children being placed with her at the Amethyst treatment program, placement is speculative at this time. Stacy Inbody, a family case manager with Amethyst and appellant's parenting facilitator, testified that appellant has "shown amounts of progress" and is "very open to the information that was given," and is "very open to her understanding of what she needs to do for herself." (Tr. 46.) However, with respect to appellant's children living with her at Amethyst, Ms. Inbody testified that a client is typically in the Amethyst program "for at least six months" before looking into the possibility of placing children there. Id. at 48. Further, while Ms. Inbody testified that appellant is progressing and doing well in the program, the following exchange occurred:
Q. Okay. Typically six months into the program is when you start looking at the possibility of children coming in, —
A. Correct.
Q. — correct? But at this point sitting — but at this point Donna's doing well in the program, correct?
A. Correct.
Q. She's doing what she needs to do?
A. Uh-huh.
Q. But you'll admit none of us are — can see into the future and if Donna God forbid were to have a relapse or — or some problem come up that would affect the determination in terms of her going up a level and also whether or not it would be approved for her children to come with her, correct?
A. Correct.
Q. So sitting here today we really don't know when we're gonna reach the point where the program can be comfortable with Donna's children coming to her there, correct?
A. As long as she continues on the track she's going right now everything looks okay.
Q. Right. But we don't know that?
A. Right.
(Tr. 50-51.)
 {¶ 17} Additionally, appellant has three children in foster care, and even if appellant were allowed to have her children placed with her at Amethyst, all three would not be placed with her at the same time.
Q. Okay. And if — if Ms. Dailey were allowed to have her children placed with her, would all three children be able to be placed at the same time with her?
A. Typically, we would like to do a — a progress more slowly to give the clients time to adjust being — bringing one or two children back versus having three come at one time would be quite stressful, but again, it goes on a case to case basis.
Q. So generally it would be more appropriate to phase the children in one —
A. Right.
Q. — at a time and would that be done through extended visitation or how would that be?
A. Yeah. We would look at extending the visitations first, you know, if it's only a couple hours during the week, we look at extending that time to going to one overnight to going to two overnights to, you know, the weekends and then a little bit at a time during the week. So just a — a gradual increase in the visits.
Q. Okay. And has Don — or Ms. Dailey been permitted to have the other two children visit for any extended period of time there?
A. Not as far as I know.
(Tr. 52-53.)
 {¶ 18} Therefore, it is speculative at best as to if and when Qu'Shaunda would be placed with appellant.
 {¶ 19} At trial, Mr. Zimmer, guardian ad litem on behalf of Qu'Shaunda testified that this is a "very difficult case" because of the recent progress of appellant. (Tr. 57.) However, the guardian ad litem went on to state:
* * * However, in making my recommendation one of the factors I'm looking at is the fact that we're just too far into the ballgame. This child has been in foster care all of her life. Children Services has had custody of her for, you know, the entire, you know, length of her more than two years of being in existence. Mom even after the child was taken from her at the hospital still is having problems with her addiction, still is not seeking treatment that she needed. Perhaps if Amethyst had been started at that point, we all wouldn't be sitting here today. But I just think it's too late. * * *. But we are — are only, you know, one month into a very lengthy program and we heard that certainly at the six month point if everything goes as it has been going they can look to start extending visits and look eventually, you know, placing the child with mom, but it's all very speculative at this point. And this child does need permanency, deserves permanency and I think deserves that.
So I — I do have to recommend that at this time that the motion for permanent custody be granted due to, you know, too much time has gone on and while mom is making progress now, I just believe it's too late.
(Tr. 57-58.)
 {¶ 20} Appellant argues that due to her current progress, this is an ideal case for temporary custody. While this argument may reflect what is in the best interest of appellant, it does not appear to reflect what is in the best interest of the child, which is the concern for the trial court. The trial court found that Qu'Shaunda fell into a category permitting the award of permanent custody, and that it was in the best interest of Qu'Shaunda to grant FCCS' motion for permanent custody of Qu'Shaunda. The testimony revealed that Qu'Shaunda's interaction with her siblings and appellant is indifferent. The testimony further revealed that Qu'Shaunda's interaction with her foster family seems very comfortable, and that she's excited to be around the foster mom and the other kids in the home. Although appellant has always had a reunification plan in this matter, appellant repeatedly failed treatment programs and failed to maintain a consistent visitation with the child. While placement of appellant's children with appellant remains a possibility in the future, it is speculative at this time.
 {¶ 21} Based on the child's age, just over two years at the time of trial, and the child's needs for permanency, the trial court found that it was in the child's best interest to award permanent custody to FCCS to facilitate permanent placement of Qu'Shaunda. Although Qu'Shaunda was too young to express her wishes regarding custody, her guardian ad litem supported granting permanent custody to FCCS so that Qu'Shaunda could be adopted. Further temporary custody to FCCS would simply prolong the process and prevent permanent placement of Qu'Shaunda. While it is apparent that appellant has made progress in the four months preceding the trial, there is no question that in the two years of Qu'Shaunda's life in which she has spent in foster care, appellant has not remedied the situation that caused the removal of the child from appellant's care. See R.C. 2151.414(E). Accordingly, we find that clear and convincing evidence exists to support the trial court's judgment.[1] Appellant's first assignment of error is overruled.
 {¶ 22} In her second assignment of error, appellant argues that FCCS did not reasonably accommodate her concerning her alleged disability as required by the American's With Disabilities Act ("ADA"). It is appellant's position that in order to accommodate her alleged disability, FCCS should have requested temporary custody rather than permanent custody.
 {¶ 23} "`Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed.'" In reAndy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312 at ¶ 23, quotingState ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81. The ADA issue was never raised in the trial court. Therefore, appellant waived the right to raise an alleged violation of the ADA for the first time on appeal. Moreover, appellant failed to establish in the record that she is "disabled" within the meaning of the statute. See In thematter of Shawn W. (Sept. 30, 1996), Lucas App. No. L-95-267. Accordingly, appellant's second assignment of error is overruled.
 {¶ 24} In her third assignment of error appellant argues that R.C.2151.414(B)(1)(d) is unconstitutional because it creates an irrebuttable presumption of parental unfitness based solely on the passage of time, where a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period.
 {¶ 25} An examination of the transcript and the trial court's decision reveals that appellant did not challenge the constitutionality of R.C. 2151.214 in the trial court. "When a constitutional issue is not raised before the trial court, it will not be addressed in the first instance by the court of appeals." In re Andy-Jones, supra, at ¶ 20, citing Bouquettv. Ohio State Med. Bd. (1997), 123 Ohio App.3d 466, 474. While we have noted that we have discretion to review a constitutional issue not raised at the trial court level, we recently declined to review a constitutional challenge to R.C. 2151.414(B)(1)(d). In re Hinkle,
Franklin App. No. 04AP-509, 2004-Ohio-6071; In re Andy-Jones, supra. In keeping with this precedent, and based on the facts herein, we decline to address the constitutionality of R.C. 2151.414(B)(1)(d).[2]
Accordingly, we overrule appellant's third assignment of error.
 {¶ 26} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
Sadler and Deshler, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The guardian ad litem argues that while the trial court's judgment entry only makes findings pursuant to R.C. 2151.414(B)(1)(a), factor (d) was also proven. Even though this issue was not addressed by the parties and does not appear in the trial court's judgment entry, we agree that the record establishes by clear and convincing evidence that Qu'Shaunda has been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999.
[2] We note that the trial court did not analyze its decision solely on the amount of time the child has been in the custody of FCCS pursuant to R.C. 2151.414(B)(1)(d). In fact, as discussed in addressing appellant's first assignment of error, the trial court's judgment entry makes findings pursuant to R.C. 2151.414(B)(1)(a) and not to 2151.414(B)(1)(d).