# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

IN THE MATTER OF:

E.K. and E.K.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 CO 0006

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio
Case Nos. JC016-0118-3; JC016-0119-3

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Robert Herron*, Columbiana County Prosecutor and *Atty. Allyson Lehere*, Assistant Prosecuting Attorney, 105 South Market Street, Lisbon, Ohio 44432, for Appellee

*Atty. Mary G. Warlop*, Abney Law Office, L.L.C., 116 Cleveland Ave. NW, Suite 500, Canton, Ohio 44702, for Appellant.

Dated: December 9, 2019

---

**WAITE, P.J.**

**{¶1}** In this expedited appeal, Appellant-mother S.L. appeals the judgment of the Columbiana County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her two minor children to the Columbiana County Department of Job and Family Services ("CCDJFS"). Appellant argues sufficiency and manifest weight of the evidence and that the trial court erred in determining that granting permanent custody to CCDJFS was in the best interest of the children. Based on the following, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}** S.L., and father M.K., had two children during their relationship, E.K., d.o.b. 6/13/2011 and E.K., d.o.b. 12/8/2013. Father is not a party in this action. On July 4, 2016, father overdosed in the family home and was resuscitated by police and emergency responders. On July 12, 2016, police conducted a drug raid in the home, recovering illegal drugs and drug paraphernalia. Both children were taken into emergency protective custody of CCDJFS at that time.

**{¶3}** On July 12, 2016, CCDJFS filed a complaint pertaining to each child, alleging the children were neglected pursuant to R.C. 2151.03(A)(2). An adjudicatory hearing on the matter was held on August 11, 2016. Appellant appeared with counsel. Father did not appear because he was incarcerated. Both children were adjudicated neglected pursuant to R.C. 2151.03(A)(3). A final disposition hearing was held on September 15, 2016. Neither Appellant nor father were present. The children remained in the custody of CCDJFS and were placed with foster caregivers. A case plan was adopted with the goal of reunification of the children with their parents. The case plan

outlined four areas of concern regarding both parents: (1) stable housing; (2) resource management and household management; (3) substance abuse; and (4) mental health concerns.

**{¶4}** On June 27, 2018, CCDJFS filed a motion for permanent custody. Trial on this motion was held on January 8, 2019. Appellant was present with court-appointed counsel. Also present was Tere Rufener ("Rufener"), the court appointed special advocate ("CASA") for the children, as well as Heather Jones ("Jones"), the CCDJFS caseworker assigned in the matter. Father did not appear, but his counsel was present.

**{¶5}** At the outset, counsel for father informed the court that father received notice of the trial but lacked transportation to appear. Counsel also stated:

> Your Honor, in my speaking with [father] he indicated to me it would have been his position that he would have surrendered had he been able to secure transportation to today's hearing. He understands that, at this time in his life, he cannot care for his children, and he also wishes for the children to have a sense of stability and a better quality of life than he could provide so he would have surrendered had he not -- had he been able to appear here today. I just wanted the record to be clear that those conversations had been had with [father] on the record. Thank you.

(1/8/19 Tr., p. 7.)

**{¶6}** Counsel for father said that he was not pursuing a defense in the matter or participating in the hearing, and that father only wanted to ensure his child support obligation was terminated. The court informed counsel that if father's parental rights were

Case No. 19 CO 0006

terminated, his child support obligation would be as well. The trial then proceeded solely on this issue of Appellant's parental rights.

{¶7} The state first presented the testimony of Jones. She had been the caseworker in this matter for the majority of time the children were in temporary custody, beginning in August of 2016. She testified regarding the case plan she had drafted. Regarding stable housing, under the case plan the parents were required to obtain and to maintain stable housing and ensure the safety of the children. They were to utilize all community resources available to assist with health care, food, housing and transportation. Jones noted that when the case opened in July of 2016 the children were living with both parents in East Liverpool. When a drug raid occurred at the residence, this required the children to be placed in temporary custody of CCDJFS. In September of 2016 father began serving a prison sentence after being convicted on drug charges related to the raid. In May of 2017, father was released and transferred to a sober living facility. He remained stable until August of 2018, when he violated his probation and was sent to jail until November 2018. He was again released from jail to a sober living house in Akron, Ohio where he was residing at the time of trial. Father admitted to a drug use relapse and told Jones he was struggling with sobriety and was not able to care for his children. (1/8/19 Tr., p. 17.)

{¶8} Jones also testified about Appellant's progress as to housing. At the time of trial Appellant was residing in two different locations with two different men. Appellant began living with T.J. in September 2016 in Newell, West Virginia and has lived with him on and off since the children were placed in temporary custody. She went to prison on drug related convictions in September of 2017. After being released in May of 2018 she

returned to T.J.'s home. Jones testified that the house was clean and appropriate and could be suitable for the children. T.J. was not made part of the case plan and had not been subjected to a home study. Appellant also resides in another home in East Liverpool with another man, K.B. Appellant realizes the home is not currently suitable for the children and she was in the process of trying to enact repairs.

**{¶9}** The second concern under the case plan was resource and household management relative to the children's immediate care. Jones testified that the foster parents were required to ensure the children's basic needs were met, including food, clothing, shelter and medical appointments. They were also to follow all court orders. Jones testified that the foster parents have been the children's only caretakers since they were placed in temporary custody and the foster parents have followed the case plan. Jones observed the children in their foster home and they "are very comfortable and happy" and are "thriving there." (1/8/19 Tr., p. 22.) The children have adequate food, clothing and housing. They are attending school and doing well. Jones testified that the foster parents "are very loving and treat these kids just the same as their own child that's in the home." (1/8/19 Tr., p. 23.) Jones also testified that the foster parents have stated that they are willing to adopt the children permanently.

**{¶10}** The third concern under the case plan is the parents' substance abuse. The plan required the parents to live free of alcohol and drug dependency. They were to schedule a drug and alcohol assessment. They were required to be honest during the assessment and follow all recommendations including alcohol counseling, outpatient counseling, and inpatient rehabilitation. They were not to associate with anyone who had a history of drug or alcohol abuse or allow anyone with a questionable background around

the children. They were prohibited from selling or manufacturing drugs. They were prohibited from abusing prescription drugs, alcohol, or illegal drugs. They were also to submit to random drug testing and take all medications only as prescribed.

**{¶11}** Jones testified that the issue that brought CCDJFS into the children's lives was a drug raid at their home and that substance abuse is the main concern of the case plan. (1/8/19 Tr., p. 25.) Father completed his initial assessment at Family Recovery and was referred to the Columbiana County Intensive Outpatient Program for treatment, but never attended. Father admitted he continues to abuse drugs. He did well for a short time while residing in a sober living facility but had relapsed, testing positive for drugs in February of 2018. Father went to jail for a probation violation until he was released to a sober living facility in July of 2018. He was again arrested for a probation violation in August 2018 for failing to pay child support. He was again incarcerated until November of 2018. As of the date of trial, father had not been subjected to drug testing since August of 2018. Jones said it was not clear whether father was sober and father had not signed a release for medical information to ascertain his sobriety status.

**{¶12}** Jones was asked about Appellant's substance abuse issues. Appellant completed an assessment at Family Recovery in August 2016 and was referred to the Columbiana County Intensive Outpatient Program but never attended. She was placed on Suboxone through another program but failed drug screening and was removed. She attended Second Chances in East Liverpool and followed through with attending the appointments but tested positive for cocaine and marijuana in November of 2016. Jones testified that Appellant was arrested in December 2016 for possessing drug paraphernalia and tested positive on her arrest. Jones stated that Appellant was honest about her drug

use and admitted to Jones that she was still using drugs. Jones encouraged Appellant to attend inpatient drug treatment on more than one occasion but Appellant refused. Appellant was released from jail in January of 2017 and put on probation. She went back to Second Chances for treatment. She tested positive for cocaine, morphine and marijuana in March of 2017. Jones warned her that she would be removed from Second Chances if she tested positive again. Yet in July of 2017, Appellant tested positive for amphetamines, cocaine and marijuana. Jones again suggested inpatient treatment, which Appellant again refused. Jones testified, "[s]he didn't feel that she needed it, and she didn't want to do inpatient because she didn't want to miss visits with her kids." (1/8/19 Tr., p. 31.)

{¶13} Appellant started another drug treatment program at Family Recovery in East Liverpool in August 2017. She was sent to prison in September of 2017 for the drug charges stemming from the raid which required placement of the children in temporary custody, originally. She attended drug treatment programs while incarcerated. She was released from prison in May of 2018. She did not attend any drug treatment programs after being released. She tested positive for cocaine and marijuana in September of 2018. Jones testified that Appellant admitted to struggling with drug addiction, particularly when she learned CCDJFS had filed a complaint for permanent custody. (1/8/19, Tr., p. 34.) Appellant tested positive for cocaine and opiates in October and November of 2018. Appellant claimed she attended a detox program in December of 2018 but never provided verification. She was not in treatment as of the day of the trial but claimed she had an appointment scheduled for the following day.

{¶14} The state presented certified copies of the judgment entries regarding Appellant's criminal history. The first was issued on September 11, 2017 regarding Appellant's three convictions for drug possession, all fifth degree felonies for which Appellant served three concurrent nine month terms. The second was from 2008 when Appellant was convicted of drug possession, a fifth degree felony. Following this conviction the trial court granted her motion for intervention in lieu of incarceration. Finally, the state presented a certified judgment entry from 2014 terminating Appellant's community control and sentencing her to 20 days in jail. Jones testified as to the authenticity of these documents and all were admitted into evidence.

{¶15} Jones next testified regarding the fourth issue of concern under the case plan, the parents' mental health issues. Both parents were to complete an initial screening and follow all recommendations to ensure they would be able to care for the children without using drugs or alcohol. Father never completed the initial mental health assessment. Appellant completed the initial assessment and was scheduled for counseling but never attended. Appellant told Jones she had issues getting her medical card reinstated after she was released from prison and did not have transportation. Jones testified that Appellant attended all of her supervised visits with the children other than when she was incarcerated. Jones testified that the visits went well, Appellant was loving with the children and the children enjoyed seeing her.

{¶16} The state next presented the testimony of the CASA, Rufener. Rufener testified that her home visits with the foster parents revealed them to be loving and affectionate and able to appropriately discipline the children. She also observed the children interacting well with the foster parents' biological child living in the home. The

foster parents' home was appropriate for the children. Rufener testified that Appellant exercised her supervised visitation and that the children were happy to see her. Despite the positive interactions between Appellant and the children during visitation, Rufener testified that she recommended that the children be placed in the permanent custody of CCDJFS based on the findings in her written reports. At the conclusion of Rufener's testimony the trial court admitted five reports drafted by Rufener as the court's own exhibits. (1/8/19 Tr., p. 61.) The five CASA reports are dated from September 9, 2016 to January 2, 2019. They outline Appellant's visits with the children, the progress made by the children and the various home visits made by Rufener. The final report included Rufener's recommendation that permanent custody be granted to CCDJFS, stating that both children indicated they wanted to live with the foster family; both parents were still struggling with drug use; the parents lacked stable housing and refused to participate in any fashion in mental health counseling.

{¶17} After the state rested, Appellant provided testimony on her own behalf. She testified that she currently was living in two different residences with a different adult male in each home, but that the home in West Virginia was more suitable for the children. She received social security income, qualified for food stamps and a medical card. (1/8/19 Tr., p. 64.) She had a valid driver's license and vehicles she could borrow as needed. She testified that while in prison she took multiple classes including anger resolution and classes on construction trade skills. She also completed substance abuse programs and presented the court with certificates of completion which were admitted into evidence. Appellant also admitted that she tested positive for drugs in October 2018 and continues to struggle with addiction. She suffered a relapse when she learned that CCDJFS was

seeking permanent custody. Appellant testified on cross-examination that she is on social security disability for post-traumatic stress disorder and depression and takes Trazadone for depression as well as anxiety medication. She was not currently in mental health counseling but was planning on "getting all that started tomorrow." (1/8/19 Tr., p. 75.)

{¶18} At the conclusion of her direct and cross-examination, the trial court asked Appellant a number of questions regarding her substance abuse. She testified that after receiving notice that CCDJFS was seeking permanent custody of her children she relapsed and continued using drugs for five months. She acknowledged that her substance issues have lasted for ten years. (1/8/19 Tr., p. 79.) She also acknowledged that she had been offered intensive outpatient treatment for substance abuse but refused, thinking she could handle her abuse issues herself. (1/8/19 Tr., p. 80.) The trial court expressed concern that Appellant's use of drugs, as recently as a week prior to the trial, was compromising Appellant's ability to keep her children safe. (1/8/19 Tr., pp. 80-81.) The court also had the following exchange with Appellant regarding her substance abuse:

THE COURT: Where did you get the cocaine a week ago?

S.L.: Off the street.

THE COURT: Where?

S.L.: Off the street.

THE COURT: How did you know what street to get it -- who did you get it from?

S.L.:  Well, unfortunately, I mean, when you live in a small town, you just know everybody.

THE COURT:  Okay, so who did you get it from, if you know them?

S.L.:  A dealer.

THE COURT:  Who's the dealer? Who's the dealer that sold you cocaine last week when you used it? What's his name?

S.L.:  Her name is Mariah.

THE COURT:  Her name is Mariah?

S.L.:  Yes.

THE COURT:  What's her last name, and where does she live?

S.L.:  This has nothing to do with that.

THE COURT:  Ma'am, I understand you're obviously hesitant to disclose those people --

S.L.:  I don't know where she lives.  I just knew -- I've seen her.

THE COURT:  And your reluctance tells me a lot.  You're covering for other people who are part of your drug culture.  You're hesitant to reveal them, to expose them, even at the cost of your children.  Don't you see that? That's been the problem here.

S.L.: Got you.

(1/8/19 Tr., pp. 81-83.)

{¶19} On January 23, 2019, the trial court issued a single judgment entry relative to both children. The entry details at length the evidence presented at trial, followed by specific findings pursuant to R.C. 2151.414(E)(1)(2) and (13), that the children could not be placed with Appellant within a reasonable time and should not be placed with Appellant. Further, the court concluded that it was in the children's best interest to grant permanent custody to CCDJFS. (1/23/19 J.E., pp. 5-10.)

{¶20} Appellant filed this timely appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE COLUMBIANA COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (CCDJFS) AS CCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO COLUMBIANA COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (CCDJFS) AS CCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE

MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} Appellant's assignments of error are identical in language but the arguments asserted under each differ. Appellant challenges the sufficiency and manifest weight of the evidence in the first assignment and the trial court's determination regarding the best interest of the children in the second. Nevertheless, we address the assignments together.

{¶22} The right of parents to raise their children is a constitutionally protected right. *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990) citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). Thus, courts must afford parents facing the potential termination of their parental rights every substantive and procedural protection the law allows. *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶23} An appellate court reviews the juvenile court's decision on a motion for permanent custody under an abuse of discretion standard. *In re Sims,* 7th Dist. Jefferson No. 02 JE 2, 2002-Ohio-3458, ¶ 13. An abuse of discretion occurs if the court's judgment is unreasonable, arbitrary or unconscionable; it entails more than an error of judgment. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). The appellate court is not free to merely substitute its judgment for that of the trial court. *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). The trial court is best able to judge the credibility of the witnesses and to weigh the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

Cannot or Should Not Be Placed or 12 of 22 Requirement

**{¶24}** Citing R.C. 2151.414(B)(1), Appellant's sole contention regarding sufficiency and manifest weight of the evidence is that the evidence at trial did not support the trial court's finding that the children were in the custody of the agency for 12 months of a consecutive 22 month period, known as the 12 of 22 requirement. Appellant does not challenge the constitutionality of the provision, only that there was no evidence presented at trial on the issue.

**{¶25}** A review of the record in this matter reveals that Appellant failed to challenge the 12 of 22 determination or lack of evidence presented at the trial court level. A number of Ohio appellate courts have declined to address the issue, ruling that the issue is waived on appeal when not challenged at trial. See, e.g., *In re Roberts,* 5th Dist. Guernsey No. 04 CA 29, 2005-Ohio-2843, ¶ 15; *In re K.*, 8th Dist. Cuyahoga No. 83421, 2004-Ohio-4629, ¶ 13; *In re K.S.,* 9th Dist. Summit No. 21913, 2004-Ohio-2660, ¶ 8-9; *In re Dailey,* 10th Dist. Franklin No. 04AP-1346, 2005-Ohio-2196, ¶ 25. We noted the waiver but addressed the argument on its merits in *In re C.R.,* 7th Dist. Belmont No. 06 BE 53, 2007-Ohio-3179, ¶ 40. In *In re C.R.,* the mother challenged the constitutionality of the 12 of 22 provision. *Id.* We held that, in accordance with other districts, the 12 of 22 provision is constitutional because the unsuitability of the parent is implicit when the child is adjudicated and remains in agency custody.

**{¶26}** The instant matter is distinguishable from *In re C.R.* not only because Appellant does not challenge the constitutionality of the provision, but also, and perhaps most notably, because a 12 of 22 finding is not required under the statutory framework of R.C. 2151.353(A)(4), the statute under which the trial court granted permanent custody

to CCDJFS. In its final judgment entry the trial court does make findings under the 12 of 22 provision as part of the initial recitation of the facts and considers this among the other factors in the court's best interest analysis. While there was no testimony presented at trial regarding the specific dates of temporary custody, adjudication or disposition, the record clearly supports the 12 of 22 finding. The case plan and multiple CASA reports admitted into evidence trace the timeline of the children's temporary custody, commencing in July of 2016 through and including the time of the permanent custody hearing. In addition, the testimony of Jones and Rufener recount the progress of the children and the parents' inability to follow the case plan during this same time period. The issue was never challenged on cross-examination by Appellant's counsel. Jones testified that she began working with the family since August of 2016 and had continued her contact for over two years. Rufener testified that she was appointed as CASA in August 2016. The court admitted five reports drafted by Rufener discussing the children's progress. It is clear the children have been in foster care the entire period. The first report is dated September 9, 2016 and the last is dated January 2, 2019. While no direct evidence was introduced as to specific dates of temporary custody, adjudication, and final disposition, any possible error can only be harmless where Appellant failed to raise the issue to the trial court and, in any event, a specific finding that the children had been in the custody of the agency for 12 months out of a consecutive 22 month time period was not required under R.C. 2151.414(E).

{¶27} The judgment entry states that CCDJFS filed its motion for permanent custody pursuant to R.C. 2151.353(A)(4). The motion filed by CCDJFS reads:

[CCDJFS] respectfully requests that this Court place the above-captioned children in the permanent custody of [CCDJFS]. The parents * * * have not completed their case plans. [Father] was working and had his own housing and after being released from prison, was doing well with his sobriety. Has recently relapsed and has not visited with his children. He was recently arrested for probation violation after failing a drug screen. [Appellant] was not able to maintain her sobriety before going to prison and she just recently got out of prison. Therefore, it would be in children's best interest to be placed in the permanent custody of [CCDJFS]. [CCDJFS] has made reasonable efforts to provide permanency by filing this motion for permanent custody on behalf of the above-captioned children.

(6/27/18 CCDJFS Motion for Permanent Custody.)

{¶28} The motion does not refer to the 12 of 22 provision, but makes it clear that the agency was proceeding with the request for permanent custody because, due to the ongoing and long term insobriety of both parents, the children could not be placed with either parent within a reasonable time and should not be placed with either parent. R.C. 2151.353(A)(4) provides:

(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.

{¶29} R.C. 2151.414(E) provides:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]

**{¶30}** This section lists sixteen factors to be considered by the trial court in determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E)(1)–(16). In making this determination, the court must first find, by clear and convincing evidence, that at least one of the factors listed in R.C. 2151.414(E) applies. Clear and convincing evidence is that level of proof which causes the trier of fact to develop a firm belief or conviction on the facts sought to be established. *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985) citing *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 119 (1954). Then the court must determine whether permanent custody is in the child's best interest.

**{¶31}** The court concluded in this matter that, pursuant to R.C. 2151.414(E), the children could not be placed with either parent within a reasonable time and should not be placed with either parent, citing R.C. 2151.414(E)(1)(2) and (13) in support of its finding.

**{¶32}** R.C. 2151.414(E)(1) reads:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶33}** The court reviewed the evidence of the parents' inability to maintain sobriety, their convictions for drug offenses, and multiple relapses. The court also noted Appellant's testimony and that, "she admits to relapsing and using cocaine as recently as approximately one week before the hearing. When questioned by the Court, it is apparent that she has not overcome her addiction and continues to protect the identity of her dealer or dealers." (1/23/19 J.E., p. 7.) The trial court also noted that Appellant refused to undergo a mental health evaluation and treatment services as required under the case plan. Finally, the court concluded that CCDJFS has "engaged in reasonable and diligent case planning and efforts to assist both parents to remedy the problems which initially caused the children to be placed outside of their home." (1/23/19 J.E., p. 7.) This is also borne out by the testimony of Jones at trial.

**{¶34}** The court also found that R.C. 2151.414(E)(2) was applicable:

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code[.]

**{¶35}** The court noted that both parents have had a long history of chronic chemical dependency which makes them unable to provide an adequate permanent home for the children and that "it is anticipated that the parents will be unable to recover from their chemical dependency so as to be able to provide an adequate permanent home for the children within one year from the date of the permanent custody hearing." (1/23/19 J.E., p. 7.) This finding is supported by the testimony from Jones detailing Appellant's chronic chemical dependency, including multiple convictions and attempts at treatment beginning prior to the birth of the minor children. Certified copies of Appellant's multiple convictions were also entered into evidence. Further, Appellant's own testimony revealed her current drug dependency and use just one week before the hearing, as well as her persistent refusal to enter inpatient treatment and her desire to protect the identity of her drug dealers. The court stated:

> [CCDJFS] engaged in reasonable and diligent case planning and efforts to assist both parents to remedy the problems which initially caused the children to be placed outside of their home. The parents have failed continuously and repeatedly to substantially remedy the conditions causing their children to be placed outside of their home.

**{¶36}** Lastly, the trial court concluded R.C. 2151.414(E)(13) is also applicable: "The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child." The case began with father's overdose and a subsequent drug raid which was conducted in the home, where drugs and drug dealers were present. The court noted both parents' multiple drug offenses resulting in

incarceration dating back over several years. The court noted Appellant's most recent incarceration for felony drug possession from September 2017 through May 2018. These findings are supported by Jones' testimony at trial, Appellant's own testimony, and in the certified copies of judgment entries of Appellant's convictions that were admitted at trial.

Best Interest

{¶37} After determining that the children could not be placed with either parent within a reasonable time and should not be placed with either parent, the court was required to determine whether granting permanent custody was in the children's best interest pursuant to R.C. 2151.414(D)(1)(a)–(e):

(D)(1) In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

Case No. 19 CO 0006

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶38}** Regarding R.C. 2151.414(D)(1)(a), the court considered the children's relationship with the parents concluding, based on the evidence, that the children and parents maintained "a loving and positive relationship" as observed during the weekly supervised visitation periods. The children also had a "loving, bonded and positive relationship" with their foster parents. (1/23/19 J.E., p. 8.) These findings are supported by the testimony of Jones and Rufener, who both testified that Appellant was consistent in exercising supervised visitation other than for the several months when she was in prison, and that the visits went well. They both testified that Appellant was happy to see the children and they enjoyed seeing her.

**{¶39}** Appellant argues that the trial court's best interest finding was not supported by clear and convincing evidence because of the testimony of Jones and Rufener regarding her visits and interaction with the children. Although Jones and Rufener both testified there were positive interactions between Appellant and the children, both also testified about the role of the foster caregivers in the children's lives. As noted above, Jones testified that the foster caregivers have been the children's only caretakers since the children were placed in temporary custody. The caregivers have followed the case plan. Jones observed the children with their foster caregivers and noted they "are very

comfortable and happy" and are "thriving there." (1/8/19 Tr., p. 22.) The children have adequate food, clothing and housing. They are attending school and doing well. Jones testified that the foster caregivers "are very loving and treat these kids just the same as their own child that's in the home." (1/8/19 Tr., p. 23.) Jones also testified that the foster caregivers have stated that they are willing to adopt the children permanently. Rufener testified that the children, "do very well in the foster home. [E.K.] seems to get along with the biological child in the home. [E.K.] appears to be very comfortable." (1/8/19 Tr., p. 55.) Rufener also testified that the foster caregivers demonstrated appropriate discipline as well as appropriate affection and reinforcement. Thus, while the testimony presented at trial indicated the children had positive interactions with Appellant, they were thriving in foster care.

{¶40} Regarding R.C. 2151.414(D)(1)(b), the court noted Rufener's testimony that, despite the positive interaction during visits with the parents, both children, ages seven and five at the time of the hearing, expressed to her a desire to remain in foster care. Rufener also testified that one of the children was particularly bonded with the foster grandmother. Two of Rufener's most recent written reports also indicated that the children wished to remain in the foster caregivers' home.

{¶41} In the judgment entry the court noted the children's need for a legally secure permanent placement, concluding:

> Due to the chronic chemical dependence of the children's parents, they do not offer a reasonable prospect for a legally secure and permanent placement for their children. The placement of the children into the permanent custody of the Children's Services Agency by contrast provides

for the children's need for a legally secure permanent placement through potential adoption by the foster care providers, or others.

(1/23/19 J.E., p. 9.)

{¶42} The trial was replete with testimony regarding both parents' ongoing drug abuse issues, including Appellant's own testimony regarding her inability to stay sober. She also testified that she refused to enter into an inpatient program, used cocaine just one week prior to trial, and she refused to disclose the identity of her drug dealer despite lengthy questioning by the court.

{¶43} We do not substitute our judgment for that of the trial court. The court's determination was supported by the manifest weight of the evidence, which clearly and convincingly showed the children could not be placed with the parents within a reasonable time, should not be placed with the parents, and that it was in the children's best interest to grant permanent custody to CCDJFS.

## Conclusion

{¶44} Based on the foregoing, both of Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 19 CO 0006

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**